HECKMAN, PLAINTIFF, *v.* CUSTER COUNTY ET AL., DE-
FENDANTS.

[No. 5,487.)

(Submitted February 20, 1924.  Decided March 6, 1924.)

[223 Pac. 916.]

*Counties—Limit of Indebtedness—Statutes—Validity—Consti-
tution—Legislature—Powers.*

Counties—Indebtedness—Statute Fixing Limit—Constitutionality.
    1.  *Held,* that Chapter 21, Laws of 1923, amendatory of section
    4614, Revised Codes of 1921, substituting the taxable value (the per-
    centage of the assessed value upon which taxes are made computable
    by secs. 1999 and 2000, Rev. Codes 1921) for the assessed value (the
    value fixed upon taxable property by the county assessor and county
    and state boards of equalization) of property as the basis for deter-
    mining the limit of county bonded indebtedness, thus in effect fixing
    a lower limit of indebtedness than that prescribed by section 5,
    Article XIII of the state Constitution, is a valid exercise of legislative
    authority.

Statutes—Legislature—Powers.
    2.  The legislative assembly has all the law-making power which in-
    heres in any independent sovereignty except as abridged by the state
    Constitution or the supreme law of the land.

Same—Legislature—Authority not Deemed Circumscribed by Implication.
    3.  Legislative authority will not be deemed circumscribed by mere
    implication, but one who attacks a statute as unconstitutional must
    be able to point out a particular provision which denies to the legisla-
    ture a power which it has assumed to assert.

Constitution—Limitation of Power.
    4.  The state Constitution, so far as it operates upon the legislature,
    is a limitation of power, as distinguished from the federal Constitu-
    tion, which is a grant of power.

Counties—Powers.
    5.  A county is a political subdivision of the state, subject to legis-
    lative regulation and control except only so far as restrained by the
    state Constitution; the statutes constitute the charter of its powers
    and to them it must look for the evidence of any authority sought
    to be exercised by it.

Same—Indebtedness—Limit Prescribed by Constitution—Legislature may
Fix Lower Limit.
    6.  Section 5 of Article XIII of the state Constitution is not a
    grant of power to counties to incur indebtedness but merely fixes
    the maximum limit of indebtedness permissible; therefore the legisla-
    ture, not being prohibited by the Constitution from doing so, may,
    as it did by enacting Chapter 21, Laws of 1923, fix a lower limit
    than that prescribed.

---

6.  Creation of indebtedness within the meaning of debt limit provision,
notes, 44 Am. St. Rep. 230; 37 L. R. A. (n. s.) 1058; L. R. A. 1917E,
437.

Original application for writ of injunction by C. E. Heck-man against Custer County and others, as County Commissioners of said county. Demurrer overruled and injunction granted.

*Messrs. Loud & Leavitt*, for Plaintiff, submitted a brief; *Mr. Chas. H. Loud* argued the cause orally.

*Mr. W. H. Cheatham* and *Mr. Daniel L. O'Hern*, for Defendants, submitted a brief; *Mr. O'Hern* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

As employed herein, "assessed value" means the value fixed upon taxable property by the county assessor and equalized by the county and state boards of equalization. "Taxable value" means that percentage of the assessed value which is made the basis of computation of taxes by sections 1999 and 2000, Revised Codes of 1921.

In round numbers the assessed value of all property in Custer county is $28,000,000, the taxable value thereof is $9,250,-000, and the outstanding bonded indebtedness of the county is $615,000.

This action was instituted by a resident taxpayer of the county to restrain the county commissioners from selling bonds to the amount of $50,000 to secure funds for the construction of a bridge over Powder River. The bonds were authorized by a favorable vote of the qualified electors and the necessity for the improvement is acknowledged. The gravamen of the complaint is that the county has already reached the limit of indebtedness prescribed by law, and whether it has or not is the sole question for ultimate determination. If the basis of computation is the assessed value of the property within the county, the limit of indebtedness has not been reached and will not be reached if the proposed bonds are issued and sold; on the other hand, if the taxable value of the property is em-

ployed as the basis of computation, the limit of indebtedness has been reached already, and these additional bonds may not be sold.

Section 5, Article XIII, of our state Constitution, provides: "No county shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five (5) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such county shall be void. No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law."

Section 4614, Revised Codes, before it was amended, author-
[1] ized the board of county commissioners to issue county bonds to obtain funds for bridge building and other public purposes, not exceeding in the aggregate, including all outstanding bonded indebtedness, five per centum of the value of the taxable property within the county as disclosed by the last assessment for state and county taxes. In *State ex rel. Galles* v. *Board of County Commissioners,* 56 Mont. 387, 185 Pac. 456, this court was called upon to answer the inquiry: What is the constitutional limit of county indebtedness? We held that the expression "value of taxable property" appearing in section 5, Article XIII, of the Constitution, means the same as "assessed valuation," and that the constitutional limit of county indebtedness is to be computed upon the assessed value of the property as distinguished from its taxable value. The question here involved is not, what is the constitutional limit of county indebtedness, but may the legislative assembly fix a legal limit lower than that prescribed by the Constitution? The decision in the *Galles Case* was rendered in November, 1919.

By an Act approved February 20, 1923, the Eighteenth Legislative Assembly amended section 4614 by providing that thereafter any new bonds to be issued, with the outstanding bonded indebtedness, shall not in the aggregate exceed ''five per centum of the per centum of the assessed value of the property upon which taxes are levied and paid within such county, to be ascertained by the last assessment for state and county taxes.'' (Chap. 21, Laws 1923.) In other words, by this amendment the legislature undertook to substitute taxable value for assessed value as the basis for determining the limit of county bonded indebtedness and succeeded, if the amended statute is a valid legislative enactment. The constitutionality of this statute is the immediate question for solution.

Our legislative assembly has all the law-making power which [2–4] inheres in any independent sovereignty, except only so far as that power is abridged by the Constitution of the state or the supreme law of the land. (*In re Pomeroy,* 51 Mont. 119, 151 Pac. 333; *Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477.) Legislative authority will not be deemed to be circumscribed by mere implication, but he who attacks a statute as unconstitutional must be able to point out the particular provision which denies to the legislature the power which it has assumed to assert. (*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161 Pac. 309.)

Counsel for defendant rely solely upon the provisions of section 5, Article XIII, above, and assert that those provisions secure to every county the absolute right to incur an indebtedness up to five per cent of the assessed value of the property within the county, and that with the limitation thus fixed the legislature may not interfere. If the provisions of section 5 above constituted a grant of power, the argument would be unanswerable; but they do not. So far as it operates upon the law-making department of government, our state Constitution is a limitation of power as distinguished from the federal Constitution, which is a grant of power. In the absence of any pronouncement upon the subject by the Constitution, the right

of the legislature to prescribe such limitation upon county indebtedness as it saw fit to impose or to deny to the counties, the right to incur any indebtedness whatever could not be [5] questioned; for a county is merely a political subdivision of the state, subject to legislative regulation and control, except only so far as restrained by the Constitution. (*Hersey* v. *Neilson*, 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30; *Bignell* v. *Cummins*, 69 Mont. 294, 222 Pac. 797.) In *Edwards* v. *County of Lewis and Clark*, 53 Mont. 359, 165 Pac. 297, this court said: "The statutes constitute the charter of a county's power, and to them it must look for the evidence of any authority sought to be exercised." That language was quoted with approval in *Sullivan* v. *Big Horn County*, 66 Mont. 45, 212 Pac. 1105.

Section 5 above does not assume to grant power; on the contrary, it is distinctly a limitation of power. The language [6] is: "No county shall be allowed to become indebted," *etc.* It is not self-executing in the sense that ancillary legislation is unnecessary. It does not authorize a county to incur any indebtedness whatever; it merely fixes a maximum limit beyond which a county may not be allowed to go. It requires affirmative legislation to enable any county to issue bonds or other evidence of indebtedness. To illustrate: The additional indebtedness sought to be incurred in this instance is for a single purpose and exceeds $10,000; hence an affirmative vote of the qualified electors is necessary. But in the absence of any legislation, how would the election be held; to whom would the returns be made, and by whom would they be canvassed; for what length of time would the bonds run, and what rate of interest would they bear; in what denominations would they be issued and how would they be sold? These questions, and others which might be suggested, only serve to emphasize the fact that it was not the purpose of the Constitution to grant to the counties the authority to incur indebtedness, but its purpose, so tersely stated, is to fix a maximum limit of indebtedness, leaving the lawmakers free to act within that limit and

grant such authority to be exercised under such regulations as they might see fit to prescribe. (*Lanigan* v. *Town of Gallup,* 17 N. M. 627, 131 Pac. 997.)

The language of section 5 is addressed to the law-making department of the state, and, paraphrased, means: No law shall be enacted which will allow a county to incur indebtedness in excess of five per cent of the assessed value of the property within the county. The only prohibition is that the limit so fixed shall not be exceeded. It does not prohibit the legislature fixing a lower limit.

Section 8, Article X, of the Constitution of West Virginia provides: "No county * * * shall hereafter be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein to be ascertained by the last assessment for state and county taxes, previous to the incurring of such indebtedness." While that provision was in full force and effect, the legislature of West Virginia enacted a statute which fixed the limit of county indebtedness at two and one-half per cent of the value of the taxable property within the county, and the Act was upheld as a valid exercise of legislative authority. (*Pfalzgraf* v. *Wood County Court,* 73 W. Va. 723, 81 S. E. 379. See, also, *Burgin* v. *Smith,* 151 N. C. 561, 66 S. E. 607.)

A due regard for a co-ordinate branch of government has impelled the courts to adopt the rule, now recognized universally, that a statute will not be declared invalid unless its unconstitutionality appears beyond a reasonable doubt. In the present instance we are not driven to recourse to that rule. We entertain no doubt that in enacting Chapter 21, Laws of 1923, the legislature acted well within its authority. As to the wisdom of the legislation we may not inquire; its manifest purpose is to protect the taxpayers against improvidence and to secure the credit of the several counties against impairment.

Our conclusion is that Chapter 21, Laws of 1923, is a valid enactment; that it establishes effectually the taxable value of

property as the basis upon which the limit of county bonded indebtedness is to be computed; that under the provisions of that Act Custer county has reached the limit of indebtedness to which it may go; and that the sale of the additional bonds sought to be issued should be restrained.

The demurrer to the complaint is overruled and an injunction will issue restraining the defendants from selling the bonds in question.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.