STATE EX REL. JUDD, RELATOR, *v.* COONEY ET AL., RE-SPONDENTS.

(No. 7,293.)

(Submitted May 14, 1934. Decided May 18, 1934.)

[32 Pac. (2d) 851.]

*Messrs. Gunn, Rasch, Hall & Gunn,* for Relator, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. J. J. Lynch,* First Assistant Attorney General, for Respondents, submitted a brief; *Mr. Lynch* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY, delivered the opinion of the court.

This is an application for a writ of mandate, filed in this court by permission because of its public character.

The Twenty-Second Legislative Assembly enacted Chapter 23 (Laws 1931, p. 67), authorizing the state board of examiners to issue and sell refunding bonds of the state of Montana for the purpose of providing funds to pay and redeem all that portion of Series A and Series B of the educational bonds of the state of Montana, issued as of July 1, 1921, pursuant to sale by the state under the provisions of Initiative Measure No. 19, enacted by the people of the state of Montana at the general election held November 2, 1920, and declared effective by the Governor's proclamation of December 6, 1920 (Rev. Codes 1921, sec. 5606 et seq.), which became optional and redeemable on July 1, 1931, for the payment of and redemption of which there are no funds available.

The Act provides that the aggregate amount of the refunding bonds issued shall not exceed the sum of $1,600,000. The board of examiners decided to issue and sell bonds thus authorized to the amount of $1,200,000, in the denomination of a thousand dollars each, to be dated July 1, 1934, providing that $171,000 shall mature July 1 of each year from the year 1935 to the year 1938, inclusive, and $172,000 on July 1 of each year from the year 1939 to the year 1941, inclusive, all to bear interest at the rate of four per cent. per annum, payable semi-annually, and offered the bonds for sale at public auction on the 8th of May, 1934. At the sale the relator, having qualified so to do, bid for the bonds so offered par and accrued interest to date of delivery, and a premium of $1,700, upon the condition that the bonds when issued should be payable from the levy and collection of the tax provided in section 7 of Chapter 23, which bid was accepted by the board; but the board in providing the form and details of the bonds authorized by Chapter 23, threatens to and will, unless commanded otherwise by this court, incorporate a certificate and recital therein that the bonds are payable from the levy annually upon all property in the state of Montana subject to taxation of an *ad valorem* tax of ten-twelfths of one mill on each dollar of the taxable value of such property, and the

board has refused, and will refuse, to sign the bonds unless they contain such certificate and recital.

Relator alleges that the value of the bonds will be greatly reduced and impaired by a recital therein that the same are payable from the tax to be levied on each dollar of the taxable value instead of on each dollar of the assessed value, as it is doubtful and uncertain whether a tax of ten-twelfths of one mill on each dollar of the taxable value of all property in the state of Montana subject to tax will provide funds sufficient to pay the principal and interest of the bonds when they mature. He asks a writ of mandate directed to the board of examiners commanding the board to incorporate in the bonds a recital and certificate that the same are payable from the tax levy annually of an *ad valorem* tax of ten-twelfths of one mill on each dollar of the assessed valuation of all property in the state of Montana subject to taxation, as provided in section 5612, Revised Codes 1921.

Upon the issuance of an alternative writ the Attorney General appeared by motion to quash, thereby admitting the facts pleaded. The matter has been submitted upon the allegations of the petition and upon oral argument of respective counsel.

It is agreed by opposing counsel that the sale of the refunding bonds will be advantageous to the state of Montana, effecting a saving in interest now payable under Series A and B, of $18,000 a year.

But one question is presented: Is it lawful for these bonds to contain the recitation that they shall be payable upon the taxable value rather than the assessed value of all property subject to the tax?

Section 4 of Chapter 23 provides that the refunding bonds shall draw interest at the lowest rate at which they can be sold at par, not exceeding four and one-half per cent. per per annum, payable semi-annually, and shall bear upon their face the words "Refunding Educational Bonds of the State of Montana," and shall be sold by the state board of examiners in such manner as they shall deem for the best interests of

the state, providing that no bond shall be disposed of for less than its par value. Section 7 provides: "The principal and interest of the bonds authorized by this Act shall be paid out of the fund created by the tax levy provided for the payment of interest and principal of the Educational Bonds of the State of Montana."

Section 5612, Revised Codes 1921, being section 7 of the Initiative Measure referred to in section 7, supra, provides, substantially, that there shall be and hereby is levied annually upon all property in the state of Montana subject to taxation an *ad valorem* tax of ten-twelfths of one mill on each dollar of the assessed valuation of such property, which tax, when collected by the county treasurers of the several counties of the state, shall be by them accounted to and paid into the state treasury to be placed by the treasurer in the state educational bond sinking and interest fund, which fund shall be used exclusively for the payment of the principal of and the interest accruing on such bonds.

The validity of Initiative Measure No. 19 was brought into question in *State ex rel. Bonner* v. *Dixon,* 59 Mont. 58, 195 Pac. 841, where it was determined to be constitutional and valid. Its validity was again affirmed in *State ex rel. Mills* v. *Dixon,* 68 Mont. 526, 219 Pac. 637, and *State ex rel. Tatem* v. *Dixon,* 70 Mont. 90, 223 Pac. 832.

At its regular session, the Sixteenth Legislative Assembly passed the Classification Act (Chap. 51, Laws 1919), now sections 1999 and 2000, Revised Codes 1921. Prior to that the assessed value and the taxable value of property meant the same thing—full cash value. The law still is that all taxable property shall be assessed at its full cash value. (Sec. 2001, Rev. Codes 1921.) By enacting Chapter 51, supra, the legislative assembly defined "taxable value" to mean that percentage of the assessed value prescribed by the scale given in section 2000, supra. (*Wibaux Improvement Co.* v. *Breitenfeldt,* 67 Mont. 206, 215 Pac. 222; *Heckman* v. *Custer County,* 70 Mont. 84, 223 Pac. 916.) This percentage runs from seven to one hundred per cent. of the true and full value of the

property assessed. It is manifest that more money will be raised by computing taxes upon the assessed value than upon the taxable value of all property subject to taxation.

When the people through the Initiative Act (sec. 5612, Rev. Codes 1921) prescribed that "there shall be and there is hereby levied annually upon all property in the state of Montana subject to taxation, an *ad valorem* tax of ten-twelfths of one mill on each dollar of the assessed valuation of such property," they declared in unequivocable terms the basis of the tax which should govern the payment of interest and principal upon the bonds. The Initiative Measure was a special Act passed by the people in conformity with section 1 of Article V and section 2 of Article XIII of the Constitution; and if there be any conflict between it and the Classification Act, a general law, the Initiative Act controls.

In providing in the refunding bonds that the tax shall be based upon the taxable value instead of the assessed value, the board of examiners evidently relies upon Chapter 158 of the Laws of 1923, wherein it is provided: "Wherever, by statute, rule, or law, it is or shall be provided that any tax shall or may be levied to the extent of a given number of mills on the property, within any County, or tax district or unit, or on the dollar, or on the value of such property, or on the taxable value or assessed value thereof, or similar expressions, or wherever it is or shall be provided, as aforesaid, that a tax may be levied not exceeding a given number of mills levied as aforesaid, or not exceeding a given percentage of the value, or taxable value, or assessed value of property, or similar expressions, the said expressions shall be taken to mean the value of the taxable property in such County, tax district, or tax-unit, as ascertained or determined by taking a percentage of the true and full value, provided, or to be provided, by law, rule, or practice, for the purposes of taxation, unless a meaning otherwise expressly and clearly appears to the contrary." (Section 1.)

The state, through the board of examiners, in good faith offered for sale valid bonds pursuant to the Initiative Measure,

and the purchasers bought them in good faith. It was beyond the power of the legislative assembly to change the law to the injury of the purchasers. So far as section 1 of Chapter 158 may be said to conflict with the Initiative Measure, it is without effect. But we think there is not any conflict between them, for ''a meaning otherwise expressly and clearly appears to the contrary'' in the Initiative Measure, and in Chapter 23, supra.

When the bonds which are to be refunded were issued and sold, the law provided for the levy and collection of the tax upon the assessed value of all property in the state subject to taxation for the payment thereof, and the duty to levy and collect such a tax became an obligation of the contract with the holders of the educational bonds. (*State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1; *Von Hoffman* v. *Quincy*, 4 Wall. 535, 18 L. Ed. 403; *State ex rel. Tipton* v. *Erickson*, 93 Mont. 466, 19 Pac. (2d) 227.)

The refunding bonds which the board of examiners have sold to the relator upon the condition that, when issued, they shall be payable from the levy and collection of taxes as provided in section 7 of Chapter 23 amount to a renewed recognition of a subsisting liability. They secure a portion of the same debt which the people authorized when they adopted the Initiative Measure, and continue to be a liability resting upon the state. (*Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. 821; *Palmer* v. *City of Helena*, 19 Mont. 61, 47 Pac. 209; *City of Los Angeles* v. *Teed*, 112 Cal. 319, 44 Pac. 580; *Opinion of Justices*, 81 Me. 602, 18 Atl. 291.)

The indebtedness to be evidenced by the refunding bonds is the same indebtedness evidenced by the educational bonds, and the levy of a tax upon each dollar of assessed value of all property subject to taxation in the state applies to and controls the levy of the tax for the payment of these refunding bonds, even without reference to any provision in the statute authorizing the issuance of the same. (*Hotchkiss* v. *Marion*, supra; *Blanton* v. *Board of Commrs.*, 101 N. C. 535, 8 S. E. 162.)

It is clear that the legislative assembly intended that the tax should be levied upon the assessed value and not upon the taxable value of the property. Furthermore, by the provisions of section 2, Article XIII, of the Constitution: "The legislative assembly shall not in any manner create any debt except by law which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged; such law shall specify the purpose to which the funds so raised shall be applied and provide for the levy of a tax sufficient to pay the interest on and extinguish the principal of such debt within the time limited by such law for the payment thereof. * * * "

It is alleged in the petition and admitted, as is noted above, that it is doubtful whether the necessary amount of money to pay the interest and principal of the bonds can be raised if taxes are levied upon the taxable value and not upon the assessable value. For this reason, if for no other, the irrepealable law provided in section 2, Article XIII, is controlling, and the tax must be levied upon the assessable value.

The fundamental policy is that full faith and credit must be maintained in the fulfillment of the state's contracts. The state of Montana will not repudiate its obligations. It is not lawful for the state board of examiners to specify in the bonds that the same are payable from the levy annually on all property in the state of Montana subject to taxation upon an *ad valorem* tax of ten-twelfths of one mill on each dollar of the *taxable value* of such property. If the board of examiners shall see fit to specify the source from which the refunding bonds shall be payable, it must specify, in effect, that they shall be payable from the levy annually upon all property in the state of Montana subject to taxation on an *ad valorem* tax of ten-twelfths of one mill on each dollar of the assessed valuation of such property.

A writ of mandate will issue prohibiting the board from specifying that the levy shall be made upon the taxable value of the property, and commanding that in making any specifi-

cation relating thereto that it follow the law as herein construed. The writ will issue forthwith.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.