# NORTHERN PACIFIC RAILWAY CO., Appellant, *v.* DUNHAM, County Treasurer, Respondent.

(No. 7,861.)

(Submitted March 13, 1939.   Decided May 4, 1939.)

[90 Pac. (2d) 506.]

*Messrs. Gunn, Rasch & Hall,* for Appellant, submitted an original and a supplemental brief; *Mr. M. S. Gunn* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Enor K. Matson,* First Assistant Attorney General, and *Mr Ernest E. Fenton,* County Attorney of Treasure County, submitted an original and supplemental brief; *Mr. Fenton* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action to recover taxes paid under protest. The complaint alleges that the county commissioners of Treasure county levied a tax of 19 mills on each dollar of the taxable value of property in the county for the year 1937, and that the levy was excessive and illegal to the extent of three mills, amounting to $1,477.77, as against plaintiff's property; one-half

of this amount was paid under protest, for the recovery of which this action was brought. The answer alleged that the taxable value of plaintiff's property was $492,754, whereas the assessed value was $1,265,699; it denied that the levy was excessive or illegal. By stipulation the cause was submitted for decision and judgment on the complaint and answer. Judgment was rendered in favor of defendant, dismissing plaintiff's complaint. The appeal is from the judgment.

The question presented is whether section 4465.12, Revised Codes, limits the levy to 16 mills on the taxable value, or permits a 16-mill levy on the assessed value of property. It is conceded that a 19-mill levy on the taxable value is less than a 16-mill levy on the assessed value.

Section 4465.12 provides: "The board of county commissioners has jurisdiction and power under such limitations and restrictions as are prescribed by law: To levy such tax annually, on the taxable property of the county for county purposes as may be necessary to defray the current expenses therefor, including the salaries otherwise unprovided for, not exceeding sixteen (16) mills on each dollar of the assessed valuation for any one (1) year; and to levy such taxes as are required to be levied by special or local statutes."

This subsection in practically its present form first came into the Codes as section 4230 of the Political Code of 1895, became subdivision 13 of section 2894, Revised Codes of 1907, and subdivision 13 of section 4465, Revised Codes of 1921. There has never been any substantial change in the subsection since its original enactment. Other subdivisions of the section have frequently been amended.

Section 1996.1, Revised Codes, which was passed in 1923, provides: "Wherever, by statute, rule, or law, it is or shall be provided that any tax shall or may be levied to the extent of a given number of mills on the property, within any county, or tax district or unit, or on the dollar, or on the value of such property, or on the taxable value or assessed value thereof, or similar expressions, or wherever it is or shall be provided, as aforesaid, that a tax may be levied not exceeding a given

number of mills levied as aforesaid, or not exceeding a given percentage of the value, or taxable value, or assessed value of property, or similar expressions, the said expressions shall be taken to mean the value of the taxable property in such county, tax district, or tax unit, as ascertained and determined by taking a percentage of the true and full value, provided, or to be provided, by law, rule, or practice, for the purposes of taxation, unless a meaning otherwise expressly and clearly appears to the contrary.''

It is contended that section 1996.1 had the effect of amending section 4465.12, and other sections, prescribing a maximum levy, so that the maximum levy is governed by the taxable, rather than the assessed value. If that section is valid, then it did have that effect. Section 1996.1, however, cannot be sustained. It is in direct conflict with section 25, Article V of our Constitution, reading: ''No law shall be revised or amended, or the provisions thereof extended by reference to its title only, but so much thereof as is revised, amended or extended shall be re-enacted and published at length.''

The rule which has been developed by the courts in states having constitutional provisions similar to our section 25, Article V, is well stated in 59 C. J. 866, as follows: ''As elsewhere shown, the principal purpose of the constitutional provisions was to eliminate the uncertainty and confusion arising from the practice of amending statutes by striking out words, by inserting words, or by striking out words and inserting others, and an Act which makes an amendment by any of the methods mentioned is squarely within the constitutional prohibition and void. So an Act which attempts to amend an existing statute by mingling the new provisions with the old, or adding new provisions so as to create out of the old and new together the law on the subject making it necessary to read the two statutes together in order to determine what the law is, is within the constitutional prohibition and void; and this is so although the later statute professes to be independent and complete in itself. On the other hand, since the constitutional provisions are to be given a reasonable and liberal construction

and are applicable only when construed according to the spirit of their restrictions, and in the light of the evil to be suppressed, it has been uniformly held that the constitutional prohibitions apply only to laws which are strictly amendatory or revisory in their character and which are usually unintelligible without reference to the former statute to express amendments only.''

The test to be applied in determining whether the constitutional provision is violated, is whether the amendatory Act is independent and complete in itself, requiring no reference to any other statute to determine its meaning and scope. If it is such, it does not conflict with the Constitution. (59 C. J. 868, sec. 454.) If, on the other hand, the Act is not complete in itself but necessitates reference to other statutes which it purports to amend by mingling the new with the old on the same subject, it is condemned by the constitutional provision. (59 C. J. 870; 25 R. C. L. 874, sec. 119.) This distinction is recognized in the note in 67 A. L. R. 565.

Section 1996.1 is not complete in itself. To ascertain its scope and meaning a search must be instituted throughout the statutes to ascertain what sections purport to be amended by it. Among such sections may be listed sections 2155, 1202, 2147, 2149, 2150, 2082, 2078, 1044, 4568, and doubtless many other sections. The only purpose of section 1996.1 was to amend the various statutes which purport to be affected by it. If it were complete in itself, then the fact that many sections were amended by implication would constitute no ground for condemning it. The fact that it is not complete in itself, but seeks to engraft upon existing statutes in wholesale fashion certain provisions in the manner in which it seeks to do it, makes the Act invalid under section 25 of Article V. Cases which by clear analogy support this conclusion are the following: *State ex rel. Gammons* v. *Shafer*, 63 N. D. 128, 246 N. W. 874; *Michaels* v. *Hill*, 328 Ill. 11, 159 N. E. 278; *Henderson* v. *City of Galveston*, 102 Tex. 163, 114 S. W. 108; *Broder* v. *Krenn*, 334 Ill. 256, 165 N. E. 602; *Martin* v. *Gilliam County*, 89 Or. 394, 173 Pac. 938; *Baldwin Lumber-Junction Milling, Inc.*, v. *Moskowitz*, 15 N. J. Misc. 438, 192 Atl. 229; *Wagner* v. *Retirement Board*, 370 Ill.

73, 17 N. E. (2d) 972; *School District Nos. 45, 22 and 75* v. *Board of County Commrs.,* 141 Kan. 108, 40 Pac. (2d) 334. In the *Martin Case* just cited, the court said: "This Act does not come within the spirit of the cases which very guardedly and reluctantly uphold repeals by implication. Here there is no attempt to enact a new and independent statute upon the same subject as the Act of 1913, supra, but an attempt to insert into it, and by reference to it, certain provisions enlarging its scope without setting forth the statute as it would appear after being so revised. If it can be done in this instance, there is no limit to the extent to which statutes can be revised or amended without setting forth the amended statute at full length, and the constitutional provision above quoted would therefore be rendered nugatory."

In the *Michaels Case,* supra, the court said: "The test is, if the Act under consideration is a complete law in itself, constituting an entire Act of legislation on the subject with which it purports to deal, it will be deemed good and not subject to the constitutional prohibition, notwithstanding it may repeal by implication or modify the provisions of prior existing laws, but if, on the other hand, the Act is merely an attempt to amend the old law on the subject treated, by intermingling new and different provisions with the old or by adding new provisions so as to create out of the existing laws and the new Act, when taken together, an Act regulating the subject treated, so that the old Act must be read with the new in order to determine its provisions concerning a liability, duty, or right or in order to give effect to the new Act, then the Act is clearly amendatory of the old law, and the requirement of the Constitution is that the law so amended be inserted at length in the new Act. The character of the Act in this respect is determined, not alone by the title nor whether the Act purports to be an amendment of existing laws, but by an examination and comparison of its provisions with the prior law as last in force."

But plaintiff contends that aside from section 1996.1, the classification statutes—sections 1999 and 2000, Revised Codes—had already accomplished the same thing sought to be

achieved by section 1996.1. Its contention is based upon the case of *Wibaux Improvement Co.* v. *Breitenfeldt*, 67 Mont. 206, 215 Pac. 222. That case considered section 5194, Revised Codes of 1921, which limited towns to levies not exceeding ten mills on the assessed value of the taxable property in the town. The court held that sections 1999 and 2000, being later in point of time than section 5194, prevailed over the latter section. As to the soundness of the conclusion in that case there is room for doubt. Sections 1999 and 2000 have nothing to say as to the maximum levies that may be made. They merely provide for the classification of property and for the assessment of the various classes upon a percentage of the full and true value thereof. Section 5194 has to do with an entirely different question, viz.: the maximum levy which a town may make. However, since that case was decided more than fifteen years ago, and since the legislature apparently has acquiesced in it, we do not feel justified at this time in overruling it. Though, as we have already held, section 1996.1 is unconstitutional, nevertheless the last line in it evinces the legislative thought that it might fix the maximum levy upon the assessed, rather than the taxable, value of property if it saw fit, providing it did so by clear and express language.

Hence we come to the question: Has the legislature since the passage of sections 1999 and 2000 evinced a purpose to measure the maximum levy under section 4465.12 upon the assessed, rather than the taxable, value of property? The subject is one over which the legislative intent controls, and it is competent for the legislature to provide, if it sees fit, that taxes for certain purposes may be imposed upon the assessed value of property, rather than the taxable value, notwithstanding the classification statutes. (*State ex rel. Judd* v. *Cooney*, 97 Mont. 75, 32 Pac. (2d) 851.) For the same reason it is competent for the legislature to provide that the maximum levy shall be measured and based upon the assessed rather than upon the taxable value. It then remains for us to determine whether it has done so by section 4465.12 as it now stands.

As before stated, the substance of section 4465.12 has never been changed. Before the passage of the Classification Act, it was the same as it now is, except that by Chapter 54, Laws of 1927, it was amended by inserting in parentheses the figures "(16)" and "(1)" as they now appear in the section. Since section 4465.12 has never been changed since the passage of the classification statutes, plaintiff contends that it must be given the same meaning now as it had after the passage of the Classification Act. It relies upon section 93, Revised Codes, reading: "Where a section or a part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form, but the portions which are not altered are to be considered as having been the law from the time when they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment."

Defendant contends that section 93 has no application here, because of Chapter 100, Laws of 1931. This chapter amended subdivisions of section 4465 not involved here, and then added this paragraph: "Section 4465 of the Revised Codes of Montana 1921 and the subsequent amendments of said Section 4465 are hereby repealed." Defendant contends that the obvious purpose of this clause was to take section 4465, as thus amended by Chapter 100, without the provision of section 93; that the clause had the effect of repealing section 4465 and re-enacting it in the amended form. Defendant's contention cannot be sustained. The title to Chapter 100 reads: "An Act to Amend Section 4465 Revised Codes of Montana 1921, as Amended by Chapter 95 Acts of 18th Legislative Assembly and by Chapter 54 Acts of 20th Legislative Assembly and by Chapters 38 and 142 Acts of 21st Legislative Assembly, Relating to the General and Permanent Powers of Boards of County Commissioners." The body of the Act made amendments to subdivision 10, and added subsection 28 relating to the leasing of county property, but made no change in what is now section 4465.12. Its purpose and effect was not changed or affected by the repealing clause. That clause was evidently added in order to make certain that Chapter 100 contained the entire law on the subject

matters dealt with by it. That the repealing clause may be treated and regarded as surplusage even the legislative assembly must have known, else reference thereto would have appeared in the title of the Act. At the time of the passage of Chapter 100, the legislature is presumed to have known of the existence of section 1996.1, which was presumed to be valid. If by the passage of Chapter 100 the legislature intended to change the meaning of section 4465.12, as attempted to be modified by section 1996.1 and as actually modified by the Classification Act, as held in the decision in the *Wibaux Improvement Co. Case,* supra, it is reasonable to suppose that it would have employed definite language in doing so, rather than to adopt the circuitous method suggested here.

By retaining the clause "not exceeding sixteen (16) mills on each dollar of the assessed valuation for any one (1) year" without any change, we must assume that the legislature intended that the words should be given the same meaning as they had at the time of the passage of Chapter 100. (25 R. C. L. 1075, sec. 297; *Spring Canyon Coal Co.* v. *Commissioner,* (10 Cir.) 43 Fed. (2d) 78, 76 A. L. R. 1063.) The limit provided for in section 4465.12, as modified by the holding in the *Wibaux Improvement Co. Case,* supra, having been exceeded, the court erred in entering judgment in favor of defendant.

This case is not controlled by the case of *State ex rel. Judd* v. *Cooney,* supra, for Chapter 23, Laws of 1931, there considered, and section 5612, Revised Codes 1921, which was adopted by Chapter 23, were both originally enacted after the classification statute, and section 93 did not control as to the meaning of words employed in either section.

The judgment is reversed with direction to enter judgment for plaintiff for the relief demanded in its complaint.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ERICKSON concur.