141 So.2d 738 (1962)
THOMAS B. LIPE, APPELLANT,
v.
CITY OF MIAMI ET AL., APPELLEES.
No. 31497.
Supreme Court of Florida.
May 16, 1962.
Rehearing Denied June 18, 1962.
*739 Cowart & Dollar, Brigham, Wright, Goodwin & Dence and E.F.P. Brigham, Miami, for appellant.
Milton M. Ferrell, Miami, for appellees.
Joseph J. Gersten, Miami, amicus curiae.
ROBERTS, Chief Justice.
The appellant, Thomas B. Lipe, was appointed to the office of Chief of Detectives of the City of Miami, on April 1, 1958. He served in this capacity until removed by administrative order of the City Manager on October 29th, 1960. At the time of his removal, appellant was reassigned to his regular civil service classification as a Detective Lieutenant.
The issues presented to this court for determination turn upon the constitutionality of Chapter 31001, Laws of Florida, Special Acts of 1955, which purports to amend Paragraph 1, Section 62, of the Charter of the City of Miami, by adding thereto a new subparagraph. However, the presence of certain ancillary issues requires that the facts and procedure followed in the instant case be set out in detail.
Upon becoming aware of his removal, appellant protested the same in writing and filed a complaint for a declaratory decree in which he, among other allegations, asserted his "doubt" as to whether Chapter 31001 violated Article III, Section 16 of the Constitution of the State of Florida, F.S.A. Appellees filed a motion to dismiss said complaint. This motion was granted with prejudice and without leave to amend on January 18, 1961. By his order, the Circuit Judge held:
"After having heard argument of counsel and examining the briefs, the Court finds that Section 62 of the Charter of the City of Miami, as amended by Chapter 31001 of the Special Acts of 1955, was applicable with respect to the pertinent allegations in the Complaint. The Court further finds that Section 62 of the Charter of Miami is a valid and existing law."
The above language clearly indicates that the Circuit Court passed directly upon the validity of Chapter 31001, thus conferring jurisdiction by direct appeal upon this court. Article V, Section 4(2), Constitution of the State of Florida. Appellant thereafter filed a motion for leave to file an amended complaint, which was denied, and after which the controversy was brought here by direct appeal.
Section 62 of the Charter of the City of Miami divides the city's civil service into classified and unclassified categories. Unless otherwise provided, unclassified employees are appointed and removed at the pleasure of the City Manager. See Bryan v. Landis, 106 Fla. 19, 142 So. 650. The removal and suspension of classified employees, *740 however, is governed by Section 65 of the Charter, which provides:
"Section 65. Power of Removal and Suspension.
"(a) Any officer or employee in the classified service may be removed, suspended, laid off, or reduced in grade by the City Manager or by the head of the department in which he is employed, for any cause which will promote the efficiency of the service; but he must first be furnished with a written statement of the reasons therefor and be allowed a reasonable time for answering such reasons in writing, which answer, if he so request, shall (so far as the same is relevant and pertinent) be made a part of the records of the Board; and he may be suspended from the date when such written statement of reason is furnished him. No trial or examination of witnesses shall be required in such case except in the discretion of the officer making the removal; in all cases provided for in this paragraph the action of the City Manager or head of the department shall be final." (Italics supplied.)
If the appellant, as Chief of Detectives, was a classified employee, the mandatory procedural requirements of Section 65 were not complied with. See State ex rel. Bauder v. Markle, 107 Fla. 742, 142 So. 822, 823.
Historically, from the date of the enactment of the City Charter until 1955, the office of the Chief of Detectives was a classified service. However, in 1955, the Legislature adopted a special act, being Chapter 31001, by which it apparently increased the enumerated number of positions falling within the unclassified civil service category. Said Act provided as follows:
"AN ACT to amend Chapter 10847, Special Laws of Florida 1925 and all Laws supplemental thereto and amendatory thereof, the same being the Charter of the City of Miami by adding to Section 62, Paragraph 1, a new paragraph by adding certain positions to the Unclassified Service of the Civil Service of the City of Miami; retaining Civil Service rights for personnel selected from Classified Service to serve in the Unclassified Service; repealing all Laws and Parts of Laws in conflict herewith.
"Be it Enacted by the Legislature of the State of Florida:
"Section 1. That Chapter 10847, Special Laws of Florida 1925 and all laws supplemental thereto and amendatory thereof, the same being the Charter of the City of Miami is hereby amended by adding to Section 62, Paragraph 1, a new paragraph to be known as Paragraph (c) and to read as follows:
"(c) Assistants to the department heads;
"Assistant chief of police;
"Chief of detectives;
"Supervisor of correction;
"Director of training in the division of police;
"Chief of fireman training;
"Chief of fire prevention;
"Assistant fire chief;
"Assistant to the division head of the division of communications.
"The foregoing personnel shall be selected from the departments in which they are employed.
"Assistants and staff of the city manager.
"Personnel with permanent civil service rights selected for unclassified positions shall retain such civil service rights in the position from which selected as may have accrued.

*741 "Section 2. That all laws or parts of laws insofar as they are inconsistent or in conflict with the provisions of this Act are hereby repealed.
"Section 3. That this Act shall take effect immediately upon becoming a law."
It is admitted that if Chapter 31001 is valid, then the office of the Chief of Detectives is an unclassified service and the appellant's removal was valid. However, appellant asserts that said statute violates Article III, Section 16, of the Florida Constitution, which provides:
"Section 16. Acts; one subject; expressed in title; amendments.  Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title, and no law shall be amended or revised (by reference) to its title only; but in such case the act as revised or section, or subsection of a section, or paragraph of a subsection of a section, as amended, shall be reenacted and published at length."
Appellant has asserted that Chapter 31001 is invalid because the title thereof is highly deceptive and misleading. We find this position to be without merit. The title in question meets the standards prescribed by Article III, Section 16, and the case law interpreting said constitutional provision. As Mr. Justice Thomas indicated in the case of Nichols v. Yandre et al., 151 Fla. 87, 9 So.2d 157, 158, 144 A.L.R. 1351,
"The general purpose of the organic restriction to prevent deceit has, however, always predominated. Thus it has been said that the title need not be an index, Smith v. Chase, 91 Fla. 1044, 109 So. 94; nor refer to matter in the body germane to the expressed subject, In re: De Woody, 94 Fla. 96, 113 So. 677; but that it must not be misleading, Hiers v. Mitchell, 95 Fla. 345, 116 So. 81; nor deceptive, Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486; but should disclose the subject, State v. Bethea, 61 Fla. 60, 55 So. 550; and be `sufficient to put all interested persons on notice that would reasonably lead to inquiry as to the contents,' Smith v. Chase, supra."
Even a cursory examination of the title in question alerts all interested parties to the fact that the Act purports to add certain positions to the unclassified civil service category. The title in question being neither deceptive nor misleading, adequately conforms to the constitutional requirements of Article III, Section 16.
Appellant's next contention is that Chapter 31001 is unconstitutional because it does not comply with that portion of Article III, Section 16 of the Florida Constitution, requiring that the Act as revised or amended shall be re-enacted and published at length.
This technical argument at first blush appears to lack force in the face of our natural desire and responsibility to uphold the enactments of the Legislature. However, when we fix our sights upon the paramount purposes underlying the mandatory constitutional requirement in question, we are compelled to agree with the appellant. By prior decision, this court has held that the provisions as to the publishing at length of an act as revised or a section as amended do not relate to the matter of the title of the statute but that such requirement is mandatory and regulates the form in which the body of the amendatory act is to be put. The effect is that when the new act as amended is a revision of the entire original act or is an amendment of a section, sections, subsection of a section or paragraph of a subsection of a section, that the new act, section, subsection of a section, or paragraph of a subsection of a section, as the case may be, shall be set forth at length, so that the provisions as amended may be seen and understood in their entirety *742 by the Legislature. State ex rel. McQuaid et al. v. County of Duval, 23 Fla. 483, 507, 3 So. 193. The classic statement of the reasons supporting such constitutional provisions was made by Judge Cooley in the Michigan case of People v. Mahaney. We adopted Judge Cooley's language in the case of Van Pelt v. Hilliard, 75 Fla. 792, at page 809, 78 So. 693, at page 698, L.R.A. 1918E, 639, wherein the following appears:
"Judge Cooley, in People [ex rel. Drake] v. Mahaney, 13 Mich. 481, speaking of a similar provision, said: `This constitutional provision must receive a reasonable construction with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another, in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect and was perhaps sometimes drawn * * * for that express purpose. Endless confusion was thus introduced into the law and the Constitution wisely prohibits such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited without violating its plain intent.'
"`It was never intended by the constitution that every law which would affect some previous statute of varient provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate.' Ex parte Pollard, 40 Ala. 77, text 98."
In the Van Pelt opinion, we went on to say:
"The constitutional provision forbidding the amendment or revision of a law by reference to its title only and requiring the act as revised, or section as amended, to be re-enacted and published at length, does not apply to amendments or repeals of statutes that are affected by implication, but applies only to laws that assume in terms to revise, alter, or amend some particular prior act or section of an act. City of St. Petersburg v. English, 54 Fla. 585, 45 South. 483."
In many states similar constitutional provisions have been interpreted as follows:
"If the amendatory act merely amends the old law by intermingling new and different provisions or by adding new provisions so as to create out of the old act and the new, when taken together, a complete act and leaves it in such condition that the old act must be read with the new to determine its provisions and meaning, then the act is amendatory of the old law, and the constitutional provision requires that the law so amended be inserted at length in the new act. Bishop v. Chicago Railways Co., 303 Ill. 273, 135 N.E. 439. Board of Education v. Haworth, 274 Ill. 538, 113 N.E. 939." People ex rel. Gramlich v. City of Peoria, 374 Ill. 313, 29 N.E.2d 539, at page 541; 82 C.J.S. Statutes Section 260 et seq.; Northern Pacific Ry. Co. v. Dunham, 108 Mont. 338, 90 P.2d 506; Gruen v. Tax Commission, 35 Wash.2d 1, 211 P.2d 651."
An examination of the form of the Body of Chapter 31001 discloses that it sets forth a new subparagraph (c) which purportedly is added to Section 62, Paragraph 1 of the City Charter. The added subparagraph is not complete in itself, either as to sentence structure or as to meaning. The effect of its addition to Section 62, paragraph 1 can only be understood when subsection (c) *743 is read together with the lead-line of Paragraph 1, which provides:
"1. The unclassified service shall include:
"(a) The City Manager and his Secretary.
"(b) The heads of departments, members of appointive boards, Judges of the City Court, the City Clerk, Chief of Police and Chief of the Fire Department.
"(c) * * *."
Subparagraph (c), standing alone, as it is set out in Chapter 31001, is unintelligible and necessitates reference to Paragraph 1, which it purports to amend to give it meaning and scope. If the second portion of Article III, Section 16 of our Constitution is to have meaning at all, it must be applied to Chapter 31001.
Throughout our deliberation, we have kept in mind our obligation to overthrow only such acts as clearly offend the spirit and meaning of the Constitution. With reluctance we find Chapter 31001 to be such an Act. We further feel constrained to point out to all concerned that the language used herein to describe the evils contemplated by the last portion of Section 16, Article III, Florida Constitution, should be strictly limited to the facts of this case, keeping ever in mind that each succeeding case must of necessity stand or fall upon the language of the statutory revision or amendment involved. If the statutory enactment is complete and intelligible in itself without reference to the act it purports to amend, Article III, Section 16 of the Constitution of the State of Florida is satisfied.
The appellees and amicus curiae take the position that appellant should be estopped to question the constitutionality of Chapter 31001 by virtue of his having accepted the promotion to the office of Chief of Detectives and the benefits thereof. We have carefully examined the record before us with particular attention being given to the Circuit Court Judge's Order granting appellee's motion to dismiss. The record is devoid of a single fact which would indicate that this question was ever before the trial court. It is a rule of long standing that on appeal this Court will confine itself to a review of those questions, and only those questions, which were before the trial court. Matters not presented to the trial court by the pleadings or ruled upon by the trial court will not be considered by this court on appeal. Mariani v. Schleman, Fla., 94 So.2d 829; Jones v. Neibergall, Fla., 47 So.2d 605.
Moreover, appellant Lipe was under no obligation to assault the validity of the 1955 Act until he was adversely affected by it. This he did at the first opportunity.
For the reasons stated, the order of the Circuit Court herein is reversed and this cause remanded for further proceedings consistent herewith.
It is so ordered.
THOMAS, DREW, THORNAL and O'CONNELL, JJ., RAWLS, District Court Judge, and WALKER, Circuit Judge, concur.