679 So.2d 309 (1996)
Albert Christian ELSER, III, and Kimberly M. Elser, Appellants,
v.
LAW OFFICES OF JAMES M. RUSS, P.A., Appellee.
No. 95-2330.
District Court of Appeal of Florida, Fifth District.
August 16, 1996.
*310 Guy P. Coburn of Rush, Marshall, Reber and Jones, P.A., Orlando, for Appellants.
Terrence E. Kehoe of Law Offices of Terrence E. Kehoe and Tad A. Yates of Law Offices of James M. Russ, P.A., Orlando, for Appellee.
GOSHORN, Judge.
Albert Christian Elser, III and his mother, Kimberly M. Elser ("the Elsers")[1] appeal the final summary judgment entered in favor of the Law Offices of James Russ, P.A. ("Russ")[2] which awarded Russ $40,865.32 in past due legal fees and costs. We reverse because (1) Russ submitted an invalid affidavit which was relied upon by the trial court when entering the summary judgment; and (2) genuine issues of material fact remained.[3]
Mr. Elser was arrested in Orange County, Florida, for driving under the influence of alcohol, driving with a suspended license, and driving with a foreign license while his Florida license was suspended. Wisconsin counsel Gregory Ricci, Mrs. Elser's personal attorney, contacted Russ regarding Mr. Elser's arrest and Russ provided Ricci with a fee quotation.
Thereafter, the parties entered into a contract wherein Russ agreed to represent Mr. Elser and the Elsers agreed to pay Russ for its professional services in handling the case. The agreement provided for a $5,000 retainer: $4,500 for fees and $500 for costs. The contract further provides in relevant part:
6. PAYMENT OF FEES, COSTS AND EXPENSES: Fees for professional services shall be billed to Client and shall be deducted from the initial retainer to the extent that said retainer is sufficient. Except as otherwise provided herein, costs and expenses shall be billed to Client and shall be deducted from the initial cost and expense deposit to the extent that said deposit is sufficient. To the extent that the initial retainer and cost and expense deposit is insufficient to cover the amounts billed, any additional amounts shall be billed to Client and shall be due and payable in Attorney's offices not later than ten (10) days from the date of the statement. In the event statements are not contested *311 in writing within ten (10) days from the date of said statement, the statements shall be deemed accepted and the Client hereby waives any objection to same and are hereby estopped from contesting the reasonableness of legal services rendered or the amount due on the account as stated in said statements. Statements are due and payable ten (10) days from the date of the statement, and interest at 1% per month shall be charged on any unpaid fees, costs or expenses not paid within that ten day period....
The first bill Russ sent to the Elsers was dated November 29, 1994, and was for $4,593.75 in attorney's fees. This amount was deducted from the $4,500 retainer, leaving a balance due of $93.75. The second bill, dated December 29, 1994, required payment of an additional $1,900, increasing the total due to $1,993.75. On January 19, 1995, the Elsers paid the $1,993.75. Mr. Elser first learned of the third bill, dated January 29, 1995, on February 2, 1995, when Russ's office manager called Mr. Elser and asked him to come to the Russ office to examine the bill. The attorney's fees for the month of January totalled $35,871.88, and with 1% interest from a previous balance, the total due was $35,872.82. Mr. Elser told the office manager that he was shocked by the amount and that it was impossible for him to pay the bill in full. He further stated that he would have to turn the matter over to Ricci.
On February 9, 1995, Ricci sent a letter by facsimile to Russ questioning the charges due. Ricci stated that he was surprised by the amount of the invoice in light of the parties' initial conversation wherein Russ indicated that the $5,000 retainer should sufficiently cover the matter from start to finish. Ricci noted that he could not advise Mrs. Elser to make payment until Ricci discussed the matter with Russ.
On February 27, 1995, Mr. Russ wrote to the Elsers informing them of a final matter regarding the suspension of Mr. Elser's driver's license that the firm was completing without further charge. Mr. Russ also included a February statement that included an additional $4,343.75 in attorney's fees and $1,406.47 in costs. Finally, Mr. Russ acknowledged that Ricci had raised some questions concerning the January invoice and stated that he would file suit unless the amounts due were paid in full by March 11, 1995.
On March 13, 1995, Russ filed a complaint for breach of contract to recover the attorney's fees and costs incurred in Mr. Elser's case. The Elsers eventually filed a second amended answer, affirmative defenses and counterclaim, admitting that they had entered into the contract and that they had agreed to pay Russ for the reasonable services rendered and costs incurred, while noting that the contract "was conditioned upon said services and expenses being not only reasonably incurred but billed in an amount reasonably related to the work performed."
Russ filed a motion for summary judgment and attached a pleading sworn to by Tad Yates, an attorney in the Russ law firm. Yates stated:
1. I am an attorney, the legal counsel for defendant LAW OFFICES OF JAMES M. RUSS, P.A., and the author of this pleading.
2. The factual statements contained in this pleading are based upon information I have obtained as legal counsel in this case from court records, the attached deposition with exhibits, and interviews conducted by me or on my behalf by employees of this law firm.
The trial court granted Russ's motion and entered final summary judgment in its favor for $40,865.32. This appeal followed the trial court's denial of the Elsers' motion for rehearing.
The Elsers contend that the trial court erred in entering final summary judgment in favor of Russ because the court improperly considered Yates's affidavit as it was not based on personal knowledge. Russ answers that this court should not consider this issue because the Elsers raised it for the first time in their motion for rehearing at the trial level. To support its contention, Russ cites Trinchitella v. D.R.F., Inc., 584 So.2d 35 (Fla. 4th DCA 1991) and School Board of Pinellas County v. Pinellas County Commission, 404 So.2d 1178 (Fla. 2d DCA 1981), rev. *312 denied, 413 So.2d 877 (Fla.1982). In Trinchitella, the Fourth District Court of Appeal stated that it could not consider issues raised for the first time in a motion for rehearing in the trial court and cited School Board of Pinellas County for this proposition. See Trinchitella, 584 So.2d at 35. School Board of Pinellas County cited Lipe v. City of Miami, 141 So.2d 738 (Fla.1962) and Buchanan v. Gulf Life Insurance Co., 286 So.2d 223 (Fla. 1st DCA 1973) as support for the same proposition. Our research indicates that there is nothing in the supreme court's opinion in Lipe that alludes to this rule of law. Rather, the court stated it would not consider matters not raised in the trial court below. See Lipe, 141 So.2d at 743.
We decline to follow Trinchitella and School Board of Pinellas County. In our view, the order granting a motion for summary judgment is not final until the motion for rehearing is considered and disposed. Until then, a trial judge is free to consider any legal error or matter overlooked relating to the entry of the summary judgment. Indeed, that is the very purpose of a motion for rehearing.
Furthermore, Buchanan is readily distinguishable from the present case because, unlike the Elsers who were merely pointing out that the trial court could not rely upon Yates's affidavit, the appellant in Buchanan, in her motion for rehearing, "changed her course one hundred and eighty degrees." Buchanan, 286 So.2d at 224.[4] We find that the Elsers can present this argument on appeal as grounds to reverse the summary final judgment.
Turning to the merits, we agree with the Elsers that Yates's affidavit was insufficient to support summary judgment because it was not made on personal knowledge, and therefore, the affiant was not competent to testify to the matters set forth therein. See Fla. R. Civ. P. 1.510(e); Thompson v. Citizens Nat'l Bank of Leesburg, 433 So.2d 32, 33 (Fla. 5th DCA 1983) ("An affidavit based on information and belief is not admissible into evidence and should not be considered by the trial court on a motion for summary judgment.").
We also agree with the Elsers that a material issue of fact remains as to whether it was reasonably necessary for Russ to perform the amount of work completed on the case, and thus summary judgment was improper. The Elsers concede that they signed the contract and that they did not pay the amounts due under Russ's third and fourth billing statements. Mr. Elser acknowledged that he had received the billing statements, and he even stated that he had no problem with "whether the services were performed or not." The Elsers' grievance is with Russ's failure to prove that all of the services Russ performed were necessary to represent Mr. Elser as contemplated under the contract. Russ responds that nothing in the contract requires this. Be that as it may, attorneys have an ethical duty to their clients pursuant to Rule 4-1.5 of the Rules of Professional Conduct to charge fair and reasonable fees regardless of how an attorney words a fee agreement. Specifically, an attorney owes his or her client a duty to only charge the client for those hours that are reasonably necessary to perform the legal services under the contract. See The Florida Bar v. Richardson, 574 So.2d 60 (Fla.1990), cert. denied, 502 U.S. 811, 112 S.Ct. 57, 116 L.Ed.2d 33 (1991). Public policy demands nothing less.[5]
*313 In Richardson, the Florida Supreme Court recognized that "all of the time a lawyer spends on a case is not necessarily the amount of time for which he can properly charge his client." Id. at 62. Rather, it found that it is "the time that reasonably should be devoted to accomplish a particular task." Id.; see also Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990) (disallowing lawyers to bill clients solely on billable hours or to charge clients without determining the reasonable time to accomplish a particular task); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985) (same), disagreement recognized on other grounds by Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Barner, 632 So.2d 1071 (Fla. 4th DCA 1994), and holding modified on other grounds by Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990). Here, while Russ submitted the bill which enumerated the number of hours employed on the case, there was no evidence before the trial court that those hours were reasonably necessary to represent Mr. Elser in the matter.
Russ asserts that even if this created an issue of fact, the Elsers did not contest the bill within the time proscribed in the contract. We reject this argument because we find that the 10 day waiver clause is unconscionable, and thus is unenforceable. See Meeting Makers, Inc. v. American Airlines, Inc., 513 So.2d 700, 701 (Fla. 3d DCA 1987).[6] The clause states:
To the extent that the initial retainer and cost and expense deposit is insufficient to cover the amounts billed, any additional amounts shall be billed to Client and shall be due and payable in Attorney's offices not later than (10) days from the date of the statement. In the event statements are not contested in writing within the (10) days from the date of the statement, the statements shall be deemed accepted and the Client hereby waives any objection to same and are hereby estopped from contesting the reasonableness of legal services rendered or the amount due on the account as stated in said statements.
It is unclear whether the time-frame begins to run from the date the bill is prepared or when it is received by the client. If the clause is to be read to mean within 10 days of the date of the billing statement, it unfairly provides no time for mailing. This would mean, for example, that a client who received the bill 9 days after it was prepared would only have 1 day to respond in writing to the attorney. "A contract that contravenes an established interest of society can be found to be void as against public policy." Chandris, S.A. v. Yanakakis, 668 So.2d 180, 185 (Fla.1995). To permit such an egregious clause to be enforceable in an attorney's fees contract would undermine the public confidence in the legal system. Cf. Baruch, 122 Fla. at 63, 164 So. at 833.[7] Alternatively, if the clause is interpreted to mean that a client must object 10 days after a client receives the bill, then, in the present case, the Elsers met the deadline because Ricci sent a letter objecting to the fees on February 9, 1995, 7 days after Mr. Elser received the statement. Accordingly, because a material issue remains as to whether it was reasonably necessary for Russ to expend the number of hours billed, the trial court should not have entered final summary judgment.
REVERSED.
COBB and HARRIS, JJ., concur.
NOTES
[1] The parties will be referred to individually as "Mr. Elser" and "Mrs. Elser," respectively.
[2] The named partner in the firm, Mr. James Russ, will be referred to as "Mr. Russ."
[3] In light of our determination, we find the Elsers' remaining arguments moot.
[4] We likewise find James A. Cummings, Inc. v. Larson, 588 So.2d 1066 (Fla. 4th DCA 1991) distinguishable because the appellant in that case was attempting to introduce additional testimony for the first time on motion for rehearing.
[5] In Lyle v. Lyle, 167 So.2d 256 (Fla. 2d DCA), cert. denied, 172 So.2d 601 (Fla.1964), and receded from on other grounds by Lafferty v. Lafferty, 413 So.2d 170 (Fla. 2d DCA 1982), the Second District Court of Appeal quoted Justice Terrell's statement about the relationship between an attorney's fee and the public's confidence in the judicial system:

Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that; it brings the court into disrepute and destroys its power to perform adequately the function of its creation.
Id. at 257 (quoting Baruch v. Giblin, 122 Fla. 59, 63, 164 So. 831, 833 (1935)).
[6] Unconscionability is a question of law that can be determined at the summary judgment stage. See Garrett v. Janiewski, 480 So.2d 1324, 1327 (Fla. 4th DCA 1985), rev. denied, 492 So.2d 1333 (Fla.1986).
[7] Furthermore, there is nothing in the record to show that Mrs. Elser ever received notice.