THE STATE OF FLORIDA EX REL. ATTORNEY-GENERAL, PLAIN-
TIFF, VS. SIMON JONES, RESPONDENT.

1. A pilot is not an officer within the meaning of the Constitution and
Statutes of this State; he is a person invested by law with peculiar
powers and privileges connected with commerce, for the exercise of
which a qualification is required by the State. The privileges and
powers which he has, being of a public nature, resulting from legisla-
tive grant, are franchises. If he is exercising such franchises without
the qualification prescribed by the State, an information in the nature
of a *quo warranto* may be brought by the Attorney-General.

2. A plea is a sufficient response to an information in the nature of a *quo
warranto*, if it sets up facts showing a right to exercise the office or
franchise alleged to have been usurped. Where a statute prescribes
a qualification for exercising an office or franchise, the plea need not
be framed in the words of the law. It is sufficient if the facts set up
show clearly the right.

3. Two years actual service on a pilot-boat on the bar of Pensacola as an
able seaman, receiving during that time instructions from pilots rela-
tive to the harbor, the bar, depth of water, courses, and the manage-
ment of vessels, constitutes an apprenticeship within the meaning of
the Statutes of this State controlling the subject. An actual binding
out is not necessary.

The information in the nature of a *quo warranto* in this
case was filed at the June term, A. D. 1876, the Hon. Wm.
Archer Cocke being then Attorney-General, and Messrs.
Jones and Mallory appearing for the relator. The respond-
ent, Jones, filed both a general demurrer and a plea on the
fifth day of August, 1876. The court disposed of the de-
murrer at the June term, 1877. The other facts necessary
to a full understanding of the opinion on the demurrer are
stated in the opinion.

*Jones* and *Mallory* for the Relator.

The position of pilot for any port in this State is, under
the laws of Florida, a public office. All pilots in this State

are appointed by virtue of an act of the Legislature; they hold their offices during life and good behavior, have definite duties prescribed, fixed rates of compensation, are required to give bond, and are entitled to do all the business of pilots of the ports for which they have been respectively appointed. They are subject to penalties for misfeasance and malfeasance, and are protected by law in the enjoyment of their offices and emoluments. See Palmer vs. Woodbury, 14 Cal., 45; People vs. Hayes, 7 How. (N. Y.) Pr., 248; Wood's Case, 2 Cow., 29, note; 2 Hill, 196; 11 How. (N. Y.) Pr., 240.

In case of intrusion into or usurpation of such office, under a proceeding of information in nature of a *quo warranto*, to oust it is only necessary to allege such intrusion or usurpation. Such usurpation, if not disproven, is of itself adequate cause for judgment of ouster. In this information usurpation of the office is alleged, and the ground of the allegation is specifically stated as being a failure on the part of respondent, Jones, to comply with the requirement of the 3d Section of Act No. 31, Chapter 1893, Laws of Florida, approved February 27, 1872, in this, that the said Simon Jones had never served a regular apprenticeship for two years on the bar of the port of Pensacola, on any pilot-boat thereon, although for five years previous to his reputed appointment as pilot there had always been at least three regular pilot-boats on the bar of the port of Pensacola.

That it is not in the power of the pilot commissioners to cure a defect of this kind, nor in their discretion to ignore it in making appointments. See Palmer vs. Woodbury, 14 Cal., 45.

These are the essentials to a *quo warranto* proceeding. If they are found in the information, until respondent disproves them, relator's case is sufficiently made out.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an information in the nature of a *quo warranto*, brought by the Attorney-General against the defendant, to show by what authority he exercises the office and franchises of pilot on the bar of the port of Pensacola. The ground upon which a judgment of ouster is sought, as stated in the information, is that at the time the defendant was appointed he did not possess the qualifications prescribed by law for such appointment, in that he had not served a regular apprenticeship of two years on a pilot-boat on said bar. To this information the defendant interposes a general demurrer, at the same time filing a plea. Under the discretion vested in this court (Sec. 34, Chap. 1096, Laws,) we dispose of the demurrer first.

The only question suggested by the brief of the relator as arising upon this demurrer is whether an information in the nature of a *quo warranto* is applicable to such a case? The relator insists that "the position of pilot for any port in this State is a public office;" that to be eligible to such office the person must be qualified as the statute requires, and that in case of ineligibility this is the proper remedy.

Is a pilot an officer? A pilot while engaged in the discharge of his special duty is an officer in the same sense that the master of the vessel is an officer; both are mariners, having, it is true, dissimilar powers. But as to the general nature of their employment, concerning, as it does, primarily the navigation of the ship, the principal difference is the source from which their power and authority is derived. The pilot derives his authority from the law independent of any contract, while the master derives his position through contract, the law attaching to such position certain powers, rights and duties. Whether a pilot is an officer in the sense in which that term is used in the Constitution of this State, is a different question. It is very clear from an examina-

tion of the statutes upon this subject that the legislative department of the government has not so viewed the matter. The Constitution (Sec. 14, Art. XVI.,) provides "that the Legislature shall not create any office the terms of which shall be longer than four years." A pilot is not named in the Constitution; he is a creature of legislative action, and the act regulating pilots and pilotage in this State has no limitation as to the duration of the appointment except good behavior.

The Constitution (Sec. 10, Art. XVI.,) prescribes a particular oath "for each officer in the State;" the Legislature does not require this oath of a pilot.

The Constitution (Sec. 27, Art. IV.,) provides that "the Legislature shall provide for the election by the people, or appointment by the Governor, of all State, county or municipal officers not otherwise provided for by this Constitution." A pilot is neither elected by the people nor appointed by the Governor; he is licensed by the board of commissioners of pilotage.

Section 13, Article V., of the Constitution, requires that "all grants and commissions shall be in the name and under the authority of the State of Florida, sealed by the great seal of the State, signed by the Governor and countersigned by the Secretary of State." A pilot's license or appointment, while it may be in the name of the State, is not required by the Legislature to be sealed, signed and countersigned, as here required.

We cannot presume the Legislature to have been ignorant of all these provisions in respect to officers under the Constitution, and it results from the action of this department of the government as to pilots that they were not thought to be embraced in the term officers as used in the Constitution.

Were it our view upon mature reflection, after thorough examination, that the functions and powers performed by

pilots were such as necessarily constituted them officers, then, even though they were only the creatures of legislative action, still they must have been either elected by the people or appointed by the Governor, (Constitution, Sec. 27, Art. IV.,) and the appointment by the board of Commissioners of Pilotage in this case would be without any foundation in law, because in direct conflict with this limitation of the Constitution. It is our opinion, however, that a pilot is not an officer within the meaning of any of these clauses of the Constitution. "By the universal assent of the maritime world, and in all jurisprudence, the master, the mate, and the pilot are placed under the general definition of mariners." (1 Mass., 508; 10 Pet., 108.) This is his general classification. So far, therefore, as the general nature of the duties which he performs are concerned, he is no more an officer of the State government, subject to be called to account for the usurpation of powers, than the master of a vessel is. There is, however, a very material and essential difference as to the source from which they derive their power and the purpose of its exercise. The master as master derives his position and employment from the owner and by contract, like any employe of a merchant or farmer.

The pilot is an instrument of the law, a means created and employed by the sovereign to promote commerce, and to such end is invested with certain power and authority as to navigation. This power and authority is vested in him by the government as a means or method through which its right and duty to prescribe rules of navigation, (one of the essentials to general well regulated commercial intercourse,) is exercised. This power is the result of an exclusive grant to him and his class by the government. A particular method for his appointment is prescribed, qualifications to constitute eligibility to appointment are required, and the amount of the fees and tolls that he may collect for his services is fixed by law, and not by contract. These

powers appertain to the public, affect an interest of great magnitude to all commerce and commercial people, and can exist in the hands of the citizen only by virtue of legislative grant.

While we think it clear that a pilot is not an officer within the meaning of the Constitution, still he is invested with powers and privileges which do not appertain or belong to every citizen. In this country, and under our institutions, such rights, privileges, and powers as these, invested by law in the citizen, being of a public nature appertaining to commerce and exercised by virtue of legislative grant, are franchises. Such is the result of the application of the principles established by the authorities to the rights and powers of a pilot. Mr. Justice Spencer, in the case of The People vs. The Utica Insurance Co., speaks of franchises as immunities and privileges in which the public have an interest as contradistinguished from private rights, and which cannot be exercised without authority derived from the sovereign power. Says he: "If in England a privilege in the hands of a subject, which the King alone can grant, would be a franchise, with us a privilege or immunity of a public nature which cannot legally be exercised without legislative grant, would be a franchise." (15 John., 387.) Like views are expressed by Mr. Justice Breese in the case of The People, *ex rel.* Kerner, *et al.*, vs. Ridgley, *et al.*, 21 Ill., 66. The right to build and use a railway and take tolls or fares is a franchise of the prerogative character which cannot be exercised without some special grant of the Legislature. (25 Vt., 433.) So in England, to have a fair and market with the right of taking toll is a franchise. So the right of taking toll at bridges, wharfs, and the like, is a franchise. (2 Inst., 220.) In this country the right to take tolls at a ferry is a franchise. In the case of a pilot, his right to collect fees fixed by law for services concerning the commerce of the country, being of a public nature resulting from legislative

grant, is a franchise. When such franchises are granted, and in order to their exercise qualifications are prescribed, the exercise of such franchises by a person not having the requisite qualifications is a usurpation. The remedy here invoked is the proper method by which the State may require the defendant to show by plea and prove a full and complete right and title to the franchise claimed. The information here alleges that this party at the time of his appointment had not served a regular apprenticeship of two years on a pilot-boat on the bar of the port of Pensacola. This, as to that port, is under the law a necessary qualification for such an appointment. The demurrer here interposed admits this allegation to be true, and the result is that it must be overruled, with liberty to defendant to plead.

At the January term, A. D. 1878, Messrs. Jones and Mallory, representing the relator, moved the court " to strike out the plea, because the same is irrelevant, insufficient and not responsive to the information, and for judgment of ouster." The plea set up a license granted by the board of pilot commissioners of the port of Pensacola February 16, 1876, and a bond conditioned to perform the duties of a pilot, and in response to the allegation of the information that respondent had not served a regular apprenticeship for two years, plead the facts stated in the following opinion of the court.

*Jones* and *Mallory* for the motion.

Respondent, though purporting to answer said information, says, under the heading number one, in said answer: " That he has exercised, enjoyed and performed the franchise, functions and duties of the office of pilot on the bar of the port of Pensacola, Escambia county, State of Florida, since February 16th, 1876, and denies that he has

performed such duties without warrant or authority, as in said information alleged."

As to the insufficiency and inadmissibility of the foregoing plea, see 12 Fla., pp. 264-5-6.

The remainder of respondent's answer or plea undertakes to justify the exercise and enjoyment of said franchise by him. But throughout he omits to allege compliance with the essential requirement without which, under our law, no pilot can be appointed.

In overruling respondent's demurrer to the information in this cause at the last term of court, Juge Westcott, alluding to the requirement of service as a regular apprentice for two years on a pilot-boat on the bar of the port of Pensacola, said:

" This, as to that port, is, under the law, a necessary qualification for such an appointment."

" The defendant must *set up*, and must show that he has a good title. The State is only to answer his particular claim. He must at once show complete title. If he fails, judgment must be given against him." 12 Fla., 265-6.

Respondent, under the 9th heading of his answer, says that he was employed for different periods on certain boats on the bar of Pensacola.

The question of his competency or experience is not material. The " necessary qualification " of having served a regular apprenticeship of two years on a pilot-boat on the bar, is omitted from his showing of title, and in that respondent has failed to set up a good title.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The demurrer to the information being overruled, the defendant, in response to the allegation that he has not served a regular apprenticeship of two years on some pilot-boat on the bar of Pensacola, " pleads that he was employed upon and performed his duties for the term of two years

on the pilot-boat Clarence Barkly, No. 4, receiving instructions from the pilots on board relative to the harbor, the bar, depth of water and courses, and the management of vessels ; that he was also employed upon the bar by Benjamin F. Stearns, a licensed pilot upon a licensed pilot-boat called the Ella for the term of two years, and also was employed upon the pilot-boat Lochiel, by Armstrong Baker, a licensed pilot upon the bar of Pensacola, for the term of eighteen months, and he was also employed by Henry Watts, a regular licensed pilot on said bar for the term of one year, making a term of service on said bar of Pensacola of six years and a half previous to his examination and license as pilot on said bar ; that the services rendered as aforesaid were those of an able seaman, with a view to perfect himself in the duties appertaining to the office of pilot."

The Attorney-General, through " Jones and Mallory, attorneys," now moves the court to strike out the plea, because the same is irrelevant, insufficient and not responsive to the information, and for judgment of ouster.

The defendant here, while not alleging an " apprenticeship," in the words of the statute, does set up six and a half years previous service with licensed pilots on pilot-boats on the bar of Pensacola, and that during two years of this service he was receiving instructions from pilots relative to the harbor, depth of water, and courses, and the management of vessels, alleging, at the same time, that he was an able seaman, and that such service was with a view to perfect himself in the duties of a pilot.

In view of the conclusion we reach, we do not deem it necessary to consider whether this motion, looking to the precise character of the plea, is the proper method to raise the question whether the facts therein set up constitute a good defence to the action, or whether it is a plea so defective that it may be treated as confessing the usurpation, and for that reason a judgment of ouster may be awarded.

In the case of the State vs. Gleason, 12 Fla., 264, the plea stricken out was but a repetition of pleas already determined insufficient, and it was apparent that there was no sincerity in the defence. To this point, see also Rex vs. Phillips, Stra., 394 ; High's Ex. Rem., 524. In addition to this, it will be seen by reference to the case of the State vs. Gleason, that a final judgment of ouster was not awarded upon the view of the court that the plea was insufficient, but upon a failure to file a good plea, after one pronounced immaterial and irrelevant had been stricken out. In other words, upon a default in pleading by which the usurpation was confessed.

The statute controlling the question here raised is as follows :

" That pilots on any of the bars of this State, in addition to the qualifications as pilots now required by law, shall hereafter be required to have served a regular apprenticeship of two years on some pilot-boat, on any such bar."

It is not denied by the State here that the defendant has every qualification other than a two years' regular apprenticeship as required by the statute, and the precise question presented by this motion is whether two years' actual service on a pilot-boat on the bar of Pensacola as an able seaman, with a view to perfect himself in the duties of a pilot, receiving instructions from the pilots on board relative to the harbor, the bar, depth of water and courses, and the management of vessels, do not, within the meaning of the statute, constitute a " regular apprenticeship." It is not necessary that the defendant should plead in the language of the law that he has served a regular apprenticeship. On the contrary, the proper method is to plead such facts as in his judgment constitute a regular apprenticeship, thus affording the opportunity of raising an issue either of law or fact upon the issue.

What is a regular apprenticeship within the meaning of

this statute? At common law, we do not find any system of apprenticeship recognized or established, through which the exclusive right to exercise any trade or profession was derived. There every man might use what lawful trade he pleased. 11 Co., 53. "Without an act of parliament, no man may be restrained either from working in any lawful trade, or using divers mysteries or trades." This matter was for years the subject of discussion in England; the adversaries to such legislation maintaining that such enactments tended to establish monopolies, and that all such restrictions were pernicious to trade—the advocates of the system maintaining that the want of such enactments led to unskillfulness in trades, which was equally, if not more detrimental to the public than monopolists of this character. The advocates of the system prevailed in the contest, and there was an enactment covering the subject, making apprenticeship obligatory. (5th Eliz., Ch. 4, §31.) In 1814, under the provisions of the act of 54 Geo. 3, Ch. 96, apprenticeship ceased to be obligatory. The construction of the early acts by the courts defined apprenticeship, and these rulings are eminently suggestive. The statute of 5th Eliz., Ch. 4, §31, enacted: "That it should not be lawful to any person or persons, other than such as then did lawfully use or exercise any art, mystery or manual occupation, to set up, occupy, use or exercise any craft, mystery or occupation, then used or occupied within the realm of England or Wales, except he should have been brought up therein seven years at the least as an apprentice; nor to set any person on work in such mystery, art or occupation, being not a workman at that day, except he should have been apprenticed as aforesaid, or else being served as an apprentice as aforesaid, became a journeyman, or hired by the year, upon pain that every person willingly offending, or doing the contrary, shall forfeit and lose for every default forty shillings for every month."

Of this statute Blackstone remarks that "the resolutions of the courts have in general rather confined than extended the restriction, and that following the trade seven years without any effectual prosecution, either as a master or a servant, is sufficient without an actual apprenticeship," citing as authority for this commentary Lord Raym., 79. Wallon, qui tam, vs. Holton, Tr. 33, Geo. II. (by all the judges.)

The same view is announced in the other cases covering the question. Holt, C. J., in Froth's case, (1 Salk., 67,) held that service as an apprentice beyond sea seven years excused from the penalties of this statute; that it was not necessary that the party should be bound.

In the case of Regina vs. Maddox, (2 Salk., 613,) the court held that "upon indictments on the statute of 5 Eliz., in evidence we allow following the trade for seven years to be sufficient without any binding, this being a hard law." 2 Wils., 168; 1 Bl., 233; Show., 242; 2 Keb., 400; 12 Mod., 401; 10 Mod., 70.

The undoubted result of the English cases is, that within the meaning of the statute of 5 Elizabeth an apprenticeship is established "if the defendant can in any manner prove the following of the trade for seven years, and that this will be sufficient without any binding." Buller's Nisi Prius, 193.

This question of qualification for trades, involving skill and practice, we do not find has been the subject of like legislation in the United States. In this country the doctrine of the common law prevails. Here, as a general rule, every man may use whatever lawful trade he pleases. It is left to the community in which he resides to determine by his practice the extent of his knowledge and skill, and to extend their patronage according to their individual wants and judgment.

In this State there is no general statute regulating the subject of apprenticeship for trades. The statute of 1828 di-

rects judges of probate to bind out as apprentices poor orphans, and the statutes of 1866, (Chaps. 1471 and 1557, laws,) authorize an apprenticeship of minors by their parents or guardians. These also authorize the apprenticeship of the children of paupers or vagrants and abandoned children. The purpose of this legislation, however, is simply to provide a means of support and partial education of such children. From such apprenticeship no exclusive rights as to the trade followed. It is an internal police arrangement looking to the employment and education of the indigent minor population of the State. It does not relate to adults. An apprenticeship is required as a qualification only in cases where the employment is connected with quasi public functions or public franchises, as in the present case. This statute does not in express terms require a binding. The purpose of the law is to secure knowledge, capacity, and skill in pilots. This is accomplished by regular, faithful, and active service under a competent pilot, as well without a binding as with it. In view of the fact that our legislation on the subject of apprenticeship is restricted to minors, a construction of this statute which would strictly confine the apprenticeship there required as a qualification to such apprenticeships as are provided for by statute, would disqualify an adult from acquiring the position of a pilot. It would likewise have the effect of restricting the common law rights of the parent, with the assent of the child, to apprentice the child to a pilot without the intervention of a judicial officer, for this is the only authority which, under the statute, has power to bind out. We cannot hold that the Legislature required such an apprenticeship as this. When we leave the statute we must look to the accepted definition of the word apprentice at the common law, under the decisions controlling the subject. We find that under these decisions, in a matter affecting materially the whole trade and commerce of England, the courts have held that a service in the trade or a follow-

ing of the occupation for the time required is an apprentice-ship, and that a binding is not necessary.

Our conclusion is, the statute not expressly requiring a binding, that such service as is set up in this plea is suffi-cient, and that the requirement of a regular apprenticeship is complied with by proof of regular service and employ-ment of such character as is stated in this plea under a com-petent instructor in the particular business.

The motion is denied.