JOHN HUTCHINS, *et al.*, v. HON. NATHAN MAYO, as Commissioner of Agriculture, and THE FLORIDA CITRUS COMMISSION.

197 So. 495

En Banc

Opinion Filed July 16, 1940

Rehearing Denied August 1, 1940

*W. D. Bell,* and *F. G. Janes, Jr.,* for Petitioners;

*John W. Bull* for Respondent Florida Citrus Commission; *George Couper Gibbs,* Attorney General, and *H. E. Carter,* Assistant Attorney General, and *William C. Pierce,* as Attorney for Respondent, Nathan Mayo.

THOMAS, J.—The petitioners seek by certiorari the review of an order of the chancellor denying their application

for a temporary injunction restraining the respondents from enforcing any of the provisions of Chapter 16854, Laws of Florida, Acts of 1935, regarding the grading, stamping or certifying of citrus fruits and from collecting assessments set out in the law or "interfering with plaintiffs for failure to observe" Rule No. 2 of the Florida Citrus Commission.

The charges in the bill of complaint on which the prayer for relief was based were: (1) that in Sections 10 and 12 of the Act there is delegated to the Commission power to establish standards without limitation or basis in fact contrary to Article II and Section 1 of Article III of the Constitution; (2) that "Section 12 adopts by reference an optional standard, and also endeavors to adopt future optional standards" in violation of Section 12 of the Declaration of Rights of the Constitution of Florida and Section 1 of the Fourteenth Amendment of the Constitution of the United States; (3) that paragraph 6 of Section 2 is discriminatory against growers of citrus fruit and in favor of farmers; (4) that paragraph 5 of Section 2 of the Act is discriminatory also because it excepts fruit shipped by express or parcel post; (5) that the Florida Citrus Commission promulgated the rule: " 'The grades adopted for Florida citrus fruits shall be the United States standards for Florida citrus fruits, as issued by the Bureau of Agricultural Economics, United States Department of Agriculture, effective September 1, 1936, as same have been or may hereafter be modified or changed,' " contrary to the statute and to the above section of the Declaration of Rights and the amendment to the federal Constitution; (6) that the title of the Act was not sufficient under Section 16 of Article III of the Florida Constitution.

Inasmuch as the last ground relied upon as a basis for relief relates to the validity of the entire Act because the

title is assailed, we will entertain it first, as did the chancellor in his able opinion. The criticism of the title was that it gave no notice "of the arbitrary power delegated to the Commission to establish standards for grades," hence does violence to the constitutional requirement that but one subject and matter appropriate to it shall be embraced in an Act and that the subject be expressed in the title of the Act.

On numerous occasions this provision has been discussed by this Court and it is needless to set out the citations of the former cases here as they can be located with slight effort. The title to the questioned law easily withstands the attack upon it. Any one reading it even casually would find in its phraseology ample notice of provisions fixing standards of citrus fruit. It gave notice of the creation of a Commission; of the stabilization and protection of the industry and of the regulation of inspection and grading of fruit and the like. It is true that no notice is given of "arbitrary" power but that particular degree of authority is not found in the Act and that adjective is the choice of petitioners.

We advert to the first objection presented by the petitioners. Sections 10 and 12 of the Act are claimed to be violative of the provisions of the Constitution of the State dividing the powers of the government (Art. II) and vesting legislative authority in the Senate and House of Representatives (Art. III, Sec. 1). It is true that these parts of the Act place in the commission extensive plenary authority to regulate the grading and labeling of fruit to accomplish the general plan and purpose contemplated by the Legislature but we find in them no unlawful delegation of power vested in the Legislature by the organic law. Where a statute of this State empowering boards, bureaus or commissions to promulgate rules, is in question "The test * * *

is whether or not the Act defines a pattern by which the rule or regulation must be made to conform.' Arnold v. State, 140 Fla. 610, 190 South. Rep. 543, text 544. This controversy involved the power of the State Board of Education. Of like import were the rulings in Richardson v. Baldwin, 124 Fla. 233, 168 South. Rep. 255, dealing with the State Plant Board, and Bailey v. Van Pelt, 78 Fla. 337, 82 South. Rep. 789, affecting the State Live Stock Sanitary Board.

The delegated powers in the instant case seem to be those which the Commission must necessarily exercise in order to effectuate the general scheme of the Legislature to regulate the industry for the industry's sake and we find in the Act no peculiarity which prevents placing it in the category of many similar ones where the Legislature has empowered a board or commission to promulgate rules and regulations to bring to fruition plans which the law-making body has conceived, created and circumscribed.

The objection to the Act on the ground that it is discriminatory against growers of citrus fruit is fully met by the decision of this Court in Mayo v. Polk Company, 124 Fla. 534, 169 South. Rep. 41, and this contention of petitioners is not well founded.

It is urged that discrimination is apparent in paragraph 5 of Section 2 where the word "ship" is defined. This word as used in the Act "means to convey citrus fruit * * * in the current of intrastate * * * interstate and/or foreign commerce by * * * any means except by express or parcel post * * *," hence that these agencies were favored over others in the transportation of the products. It seems to us that the reasoning of the chancellor in disposing of this question is quite logical. Primary purpose of the legislation was to regulate citrus industry for its own protection and the method adopted for the transportation is incidental to the

object sought to be accomplished. By the exception there is no favoritism between those engaged in the business but if any existed it would be in the group of carriers, a matter not before us in this litigation. We find no cause to hold that part of the Act discriminatory for to all those engaged in one class is given the opportunity to patronize the carriers excepted, or not, as they please. Given this privilege one citrus fruit grower is not in a position to say that he receives different treatment from another of the same status.

We reach the last contention which presents more serious difficulties in solution than the others which have not led us to the conclusion that the Act is defective. It will be noted that the Commission adopted rules of a federal bureau fixing standards whether then extant or later revised. We must decide whether the power given the State body was sufficient to make effective regulations of a federal bureau to be adopted by the latter in the future.

Section 12 of the Act provides that fruit "* * * shall be graded according to the standards established from time to time by the Commission, or at the option of the shipper, according to the standards as now fixed by the United States Department of Agriculture, or as such standards may be hereinafter modified or changed * * *."

The paragraph under attack concludes with this sentence: "For the use and benefit of those shippers desiring to have citrus fruit graded according to the standards as now fixed by the United States Department of Agriculture or as such standards be hereafter modified or changed, the official United States standards for citrus fruit as applied to the State of Florida are hereby adopted, except that the term 'culls' shall be substituted for the term 'unclassified.' Sec. 12, *supra*."

It is required that fruit shall be graded according to the criteria of the State commission or if so desired, in con-

formity with those determined by the federal bureau. Being optional it would seem that if the latter should become more stringent than the former the person affected would be compelled to comply only with the rules of the State agency. Thus he would not become the victim of regulation more severe than that of the Commission which has the power of reasonable control. This idea is emphasized by the last sentence of Section 12 of the Act where the adoption of present and future rules is provided for benefit of those choosing the federal regulations.

In view of what we have written about the limitation of the Commission's power to the general plan of the Legislature, we cannot approve the optional features to which we have referred, so far as they relate to rules to be adopted by the federal bureau after the Act became effective. At first glance it appears that complaint could not be made by one who had the choice of observing the rules of either the federal or the State agency. If the latter were more stringent he could abide by the former, hence select the easier path.

Upon scrutiny, however, a different situation presents itself if we consider the one governmental agency independent of the other and a contrary view is immediately reached. Again the question of delegation of power arises, this time by the State Legislature to the federal bureau. We do not question the authority of the Legislature to make optional the regulations of the latter as they then existed but rules thereafter adopted by this agency could not be made effective unless subsequently accepted by the Commission in whom such power was reposed by the State legislative body. There should be secured to the State Commission the power to fix and enforce its own rules. If wisdom dictates the adoption from time to time of those of the federal agency the practical result will be precisely the same but we feel that at all times

the power granted in the Act should be exercised by the State Commission. In this manner control will remain in the Commission where the Legislature intended it; the control calculated to maintain the standards necessary to the stabilization and protection of a great industry. If, as has been said, the Florida Citrus Commission adopts current regulations of the Bureau of Agricultural Economics, which they conclude to be appropriate and sufficient, the ends of uniformity will doubtless be advanced, but theirs is the duty and responsibility of approving the rules and regulations which they must make effective.

According to the bill the Citrus Commission, in the rule quoted in full, *supra,* attempted to merge their regulations and those of the federal bureau by the adoption of the latter as issued in 1936 and as later revised. There the attempt is made to put into effect also any modifications or changes made by the federal agency after the action of the State Commission.

The latter portion of the rule, we decide, goes beyond the limitation of the Commission's authority. We have said they could be given power to enunciate rules to effectuate the real purpose of the Act. We cannot accept the view that the State Commission may make binding rules to be promulgated by the federal bureau in the future. That is a delegation of a delegated power which we cannot sanction. We consider the principle unsound. It was said in Smithberger v. Banning, 129 Neb. 651, 262 N. W. Rep. 492, 100 A. L. R. 686, that State funds could not be appropriated for expenditure under an Act of Congress to be passed in the future because such an Act was an attempt to delegate power to the National Congress. If such a delegation could not be made to the creator of the federal bureau it could not be made to the creature. See also 16 C. J. S. Const. Law, Sec. 133.

It is the order of the Court that certiorari be granted and that that part of the decree denying the injunction to restrain the enforcement of the portions of the rule and the statute specified herein be quashed.

So ordered.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.