GRACE NICHOLS, single, v. E. W. YANDRE, ASHER PETER and A. N. GOODWIN, and FLORIDA PARK CEMETERY COMPANY, a Florida Corporation.

9 So. (2nd) 157                                          En Banc
July 10, 1942

88

G. P. Garrett, for appellant.

Maguire, Voorhis & Wells, for appellees.

J. Tom Watson, Attorney General, Lewis W. Petteway, Assistant Attorney General, as Amicus Curiae.

THOMAS, J.:

We are asked to review two separate judgments; one in favor of the defendants Asher Peter and Florida Park Cemetery Company and the other in favor of the defendants E. W. Yandre and A. N. Goodwin, both entered upon demurrers to the amended declaration. The two sets of demurring defendants fall in slightly different categories as will be observed as we discuss the points in controversy.

The salient allegations of the amended declaration were that 21 March 1941 Asher Peter, president of Florida Park Cemetery Company, "undertook for and on behalf of. the said corporation to sell" the plaintiff-in-error thirty shares of stock and caused to be issued to her a certificate therefor. It is averred that the sale was ineffectual because at the time of the transfer of the stock and the subsequent approval by the directors of the corporation there had been no compliance with the Uniform Sale of Securities Act, Chapter 14899, Laws of Florida, Acts of 1931, as amended, and

that until the ratification by the directors about five months later the president had no authority to make the sale. Appellant asserted that she rescinded the transaction and demanded the return of the purchase price of the stock before ·suit. Thus, at the outset, two matters are ·presented for determination, id est, the constitutionality of Section 16 of Chapter 14899, supra, and the sufficiency of the allegations to form a basis for proof that the defendants E. W. Yandre and A. N. Goodwin *participated* in the sale by voting as directors to ratify it about five months after the transfer so as to make them liable under the challenged Section. The title to the Act is so short and simple that we quote it in full: "An Act Regulating the Sale of Securities and to Make Uniform the Law Regulating Thereto, and to Repeal Statutes Which Are Inconsistent Herewith." Inasmuch as a reference to Section 16 is necessary to a decision of both of the above questions it is well to give now the substance of it. It provides that sales made in violation of its terms are voidable and that "the person making such sale and every officer, officer or agent of or for such seller, if such director, officer or agent shall have *personally participated* . . . in making such/ sale shall be jointly and severally liable to such purchaser . . . upon tender of the securities sold . . . for the full amount paid . . . together with all taxable court costs and reasonable attorney's fees . . ." (Italics supplied).

The contention of the appellee is that the title which we have quoted in full was insufficient to serve notice of the section, excerpts of which we have given, and that the law violates Section 16 of Article III of the Constitution providing that an Act "shall embrace but one subject, and matter properly connected therewith,

which subject shall be briefly expressed in the title
. . ." The subject is the matter to which an act
relates; the object, the purpose to be accomplished.

The Court has ofttimes passed upon the constitution-
ality of Acts of the Legislature challenged because the
titles were too narrow and there is little use to attempt
a review in any detail of these decisions because it is
largely true that each of them has been based upon
the particular phraseology of the law under considera-
tion. The general purpose of the organic restriction
to prevent deceit has, however, always predominated.
Thus it has been said that the title need not be an
index, Smith v. Chase, 91 Fla. 1044, 109 So. 94; nor
refer to matter in the body germane to the expressed
subject, In re: DeWood, 94 Fla. 96, 113 So. 677; but
that it must not be misleading, Hiers v. Mitchell, 95
Fla. 345, 116 So. 81; or deceptive, Whitney v. Hills-
borough County, 99 Fla. 628, 127 So. 486; but should
disclose the subject, State v. Bethea, 61 Fla. 60, 55 So.
550; and be "sufficient to put all interested persons on
notice that would reasonably lead to inquiry as to the
contents," Smith v. Chase, supra.

We will refer to two cases which have some analogy
to the instant one. In Smith v. Chase, supra, the
Court was considering Chapter 10233, Laws of Florida,
Acts of 1925, and it was held that the title providing
for the regulation of real estate brokers and salesmen
was not sufficient to place a reader upon inquiry that
it embodied provision·for punishment of every one
making false statements concerning land. In State
v. Armstrong, 127 Fla. 170, 172 So. 861, the Court
held that Section 6 of Chapter 16386, Laws of Florida,
Special Acts of 1933, providing for removal of city
officials for failure to abide by the budget appropria-

tions was unconstitutional because it was not embraced in the title describing the Act as one for the regulation and control of the levy and assessment of taxes and the regulation of the budget.

These are apparently the cases most nearly analogous to the one with which we are dealing but upon comparison they are readily distinguishable. One of them dealt with an Act which, though purporting to regulate a particular business or profession, contained a provision for punishment of all violators, even though not members of that business or profession. In the other there was considered a law containing provisions for the removal by the governor of a city official from that responsible position in the event of his failure to comply with it although it was designed, according to its title, to deal solely with the budget and taxation. In both instances it is easily seen how one relying upon the title would have been deceived as to the contents.

In the present case the subject matter was the regulation of the sale of securities. We think the verb "regulate" embraces the fixing of limitations and restrictions and also the enforcement of them.

Obviously the statute, Chapter 14899, supra, was designed by the legislature to protect the investor in securities, not against losses from a fluctuating market, but from any fraud that might be practiced upon him. That was the purpose recognized by this Court in State v. Minge, 119 Fla. 515, 160 So. 670. It seems to us that any one reading the title would become aware not only of the imposition of restrictions but also of their purpose and that he would be led to an examination of the body of the Act to determine the consequences of noncompliance, the status of stock

sold in violation of the terms of law and the remedies of the stock purchaser who had been a party to a sale made contrary to its inhibitions. These are small matters so closely allied with the patent object as to be encompassed in the title. The position of the appellee in this respect seems supported by decisions of the Courts of other states. In Cavanaugh v. People, 61 Col. 292, 157 Pac. 200, the title of an Act to regulate the business of loaning money was held sufficient to cover a provision with reference to the amount of interest which could be charged, the object of the Act being the regulation of the business as distinguished from the control of rates of interests which was only incidental. The Supreme Court of Pennsylvania held that "An Act relating to warehouse receipts" gave notice of a clause providing for a penalty for its violation and observed that "nothing could be more germane to this than a clause in the Act prohibiting a disregard . . . and providing a penalty . . . ." Commonwealth v. Rink, et al., 267 Pa. 408, 110 A. 153. In Broadbent v. McFerson, 80 Col. 264, 250 P. 852, the Supreme Court of Colorado decided that the title "An Act relating to banks and bankers" was sufficient to embrace a provision with reference to liability of stockholders of insolvent banks and bank commissioner's exclusive right to sue thereon. This Court, in Grand Lodge, Knights of Pythias, etc., v. Moore, 120 Fla. 761, 163 So. 108, held that "An Act relating to the regulation, supervision, and control, of Fraternal Benefit Societies" was constitutional although in the body there were provisions relating to the status of benefit certificates, together with Constitution and by-laws of society, with amendments, as constituting agreements and admissible evidence.

It seems to us that an effort on the part of the Legislature to cast about the investing public a shield against fraud in the sale of securities would amount to no more than a gesture unless provision was made for the enforcement of the restrictions and one for a remedy available to the purchaser where the seller had failed to comply. They are decidedly germane to the title announcing that the subject of the law is regulation of sales of securities. The presumption is in favor of the constitutionality of the Act and we entertain no doubt after an examination of the· record that its validity should be upheld.

There is a presumption that the trial court ruled correctly when it held, upon grounds other than the unconstitutionality of the Act, that the declaration stated no cause of action against the two defendants we have named, one of whom apparently had no active part in the transaction and the other no part at all until the meeting at which the board of directors ratified what had been done by the president of the corporation. The fair construction of the declaration is that the stock had been transferred and the money received by the corporation wholly without any assistance on their part and the question is whether they "personally participated or aided in any way in making such sale" when they voted for approval of the president's action "in selling the stock," and thus became liable to the purchaser. So far as we can determine from the declaration one of these defendants did not know about the transaction until the day of ratification. Our view is that this action by them as directors, taken before appellant rescinded the contract, simply settled any question of the authority of the president of the corporation to act for it.. We are not inclined, however,

to follow appellant in her reasoning that the sale was not consummated until the date of approval and that responsibility against all became fixed then. We do not construe that action on their part as a personal participation or aid in making such sale. That language implies some activity in inducing the purchaser to invest and so far as we know from the declaration one of these two directors may not, at the time the plaintiff was interested in buying the stock, have been connected with the corporation in any capacity whatever and neither of them offered any assistance at all in influencing appellant to buy. With respect to these defendants we think the declaration is insufficient and that the court properly entered the judgment on their demurrer.

The last question presented in the appeal is the one whether Section 5 of Chapter 16174, Laws of Florida, Acts of 1933, repealed Section 16 of Chapter 14899, supra. Our conclusion is that it did not. The former simply provided that civil remedies under the laws of the United States now or hereafter (see Hutchins, et al., v. Mayo, 143 Fla. 707, 197 So. 495) in force should be available "also" to purchasers of securities under the latter Act and any amendments of it. We construe so much of this Section 5, supra, as is valid to be merely cumulative.

Affirmed in part; reversed in part.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, CHAPMAN and ADAMS, JJ., concur.