62 So.2d 16 (1952)
THOMPSON, Sheriff, et al.
v.
INTERCOUNTY TEL. & Tel. CO.
Supreme Court of Florida, en Banc.
December 19, 1952.
Richard W. Ervin, Atty. Gen., John A. Madigan, Jr., and Ralph M. McLane, Asst. Attys. Gen., and Lewis Tribble, Tallahassee, for petitioners.
Henderson, Franklin, Starnes & Holt, Fort Meyers, for respondent.
THOMAS, Justice.
The chancellor denied in part a motion of petitioners to dismiss a bill filed by the respondent to restrain the execution by the sheriff of a warrant issued by the comptroller for the collection of use taxes, penalties and interest claimed to be due under Chapter 26319, Laws of Florida, Acts of 1949, Ex.Sess., F.S.A. § 212.01 et seq.
In the order it was determined, first, that the act was unconstitutional so far as the taxes here involved were concerned because its title gave no sufficient indication of its contents relative to such taxes as required by Section 16, Article III of the Constitution, F.S.A., but, second, that the defect in this respect was cured by the enactment of Florida Statutes 1951, Chapter 26484, Laws of Florida, Acts of 1951.
For particular information about the taxes now in litigation we return to the bill where we learn that they were assessed on personal property purchased by the respondent, a telephone company, outside the state and used here "in connection with its * * * system * * *." It is expressly alleged that the comptroller has audited the respondent's records and fixed the amount sought to be collected as "use taxes."
The familiar constitutional requirement is that "Each law * * * shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title * * *."
The pertinent phrases of the title follow: "An Act to Define Certain Additional Privileges, and to Levy and Provide for the Collection of Privilege Taxes upon Sales of Personal Property, upon Admissions and upon Rentals of Real and Personal Property * * * to Provide for the Creation and Enforcement of Liens upon Real and Personal Property * * * for * * * Such Taxes * * * to Appropriate Monies Derived from Such Taxes and to Direct the Payment of * * * Monies Derived from Such Taxes * * *" and so on. (Italics ours.)
The comptroller relied upon Section 6 of the act for his authority to levy the tax, *17 so to decide the matter we must examine so much of that section as deals with property of the character now in litigation and compare its language with a title referring to privilege taxes on sales, admissions and rentals. It was there provided that a "tax at the rate of three per cent (3%) of the retail sales price, as of the moment of sale, or three per cent (3%) of the cost price, as of the moment of purchase, as the case may be, shall be collectible from all dealers as herein defined on the sale at retail, the use, the consumption, the distribution and the storage for use or consumption in this State, of tangible personal property." Among several definitions of "dealer" appears the one that seems pertinent here: a person "who imports * * * tangible personal property from any State or foreign country, * * * for use, or consumption, * * * or for storage to be used * * * in this State."
Without restating the long-established principles we follow in gauging, generally, the constitutionality of acts of the legislature, such as the indulgence of the presumption of validity, or the rules by which titles will be tested, Nichols v. Yandre, 151 Fla. 87, 9 So.2d 157, 144 A.L.R. 1351, we go directly to the immediate question which, in the present case, is as easily decided as stated. Would one reading the caption about taxes on sales of personal property rentals and admissions gather the thought, or even the suspicion, that taxes were also authorized against property imported from another state for use, or storage for use? It seems to us a negative answer is inescapable, especially if the reader was the importer of property that would not be resold but would be used, as by the respondent, in the operation of a communication system. No one, much less a person engaged in the business of the respondent, would be apprised by the title that property imported to maintain a telephone system would be subject to the tax.
There can be no doubt that the legislature considered the tax a "use tax" for the language in the act specifically provided that the "use tax" should not "apply to tangible personal property * * * imported into this State * * * prior to the effective date * * *. But * * * to all * * * [such] property imported * * * on or after the effective date * * *."
A method by which acts, or titles, may be cast into one category or on the other with the accuracy that the chemist attains by the use of litmus is not available to us. Too often, because of the vast variety of subjects we must resort to our own judgment to test the relationship between title and content.
Basing our judgment on the plain meaning of the language the lawmakers selected we conclude that the tax sought to be imposed was, indeed, a use tax and not a sales tax and that the difference between the two is not so slight that the appearance of one term in the title served as a label for the other, in the body of the act. The characteristics of a sale and a use differ so widely that they do not coincide either in concept or practice. A tax on the latter would be a tax on the enjoyment of property already purchased which might never be resold.
We think, too, that the provision for a use tax is not clarified or strengthened by the reference in the title to a definition of privileges. Even if this language be construed as notice of a section describing as a privilege the importation and storage of property to be employed in furnishing facilities of communication to subscribers, it would not follow that such a privilege, if it could be called that, was, upon becoming defined, to be taxed.
As will have been seen, the act in question was enacted in nineteen forty-nine. It is significant that when an amendatory law, Chapter 26871, Laws of Florida, Acts of 1951, was passed at the following session of the legislature the original act was described as "Relating to the Imposing and Collecting of Privilege Taxes on the Sale, Use and Storage for Use or Consumption of Tangible Personal Property, on Admissions and the Rental of Tangible Personal Property * * *" etc. (Emphasis supplied.) It would be fair and logical to deduce that the legislature itself recognized and purposed to correct a deficiency in the title of the first act.
*18 The chancellor held that the defect was cured by the passage of Chapter 26484, supra, hence the bill should be dismissed so far as it challenged taxes levied after that act became effective. The petitioners heartily agree with the ruling relative to the effect of this act, which adopted and enacted Volume I, Florida Statutes 1951, but they contend that the curative qualities are much stronger and farther reaching, and take care of all imperfections from the beginning. In the words of the Attorney General's brief "it is submitted that the defect in Chapter 26319, if any, was cured by the revision in such a manner as to render the act valid from the date of its original enactment."
We have adopted "the rule that an act, the title of which is insufficient, may become valid by incorporation in a general revision of the laws whether the insufficiency has been adjudicated or not" in a case, State ex rel. Badgett v. Lee, 156 Fla. 291, 22 So.2d 804, 807, where we discussed the effect upon an act of a decision declaring it unconstitutional and a subsequent decision of contrary force. We held that a law pronounced violative of the constitution becomes inoperative and dormant, but not beyond resurrection by a subsequent decision, in which event its effectiveness will, under the opinion in Christopher v. Mungen, 61 Fla. 513, 55 So. 273, date from its origin but not affect rights acquired between the conflicting decisions. We concluded that inasmuch as imperfect titles could be corrected in general revisions of the laws, there was no reason to discriminate between laws that had and those that had not been adjudicated unconstitutional.
Petitioners claim support in this decision for the position that a deficient title would, when rectified, be considered valid from its origin, but we do not see the analogy. The very purpose of the requirement, notice, would be defeated by such a holding. If the respondent in this case could reasonably have been deceived by the title in nineteen forty-nine, and thereby have been lulled into a feeling that his property was not subject to a tax, notice given at the time of revision two years later would offer no comfort or protection, or opportunity to be heard in opposition to a proposed imposition. It would be much like serving a defendant with perfected service after the entry of a judgment against him and making the notice of suit valid nunc pro tunc.
We think the contention of the attorney general in this respect is not sound.
Because of the nature of this case we have observed the exception to our rule number 34, 30 F.S.A. by preparing an opinion.
Finding no error the petition for certiorari is denied.
SEBRING, C.J., and TERRELL, HOBSON, ROBERTS, MATHEWS, and DREW, JJ., concur.