REGISTER v. BOARD OF PILOT COMMISSIONERS.
No. 64-3781-E.

Circuit Court, Duval County.

May 31, 1965.

Albert S. Millar, Jr., Jacksonville, for plaintiff.

Thomas S. Biggs, Jr., Jacksonville, for defendants.

ROGER J. WAYBRIGHT, Circuit Judge.

*Final decree*: This case involves points apparently not previously decided in Florida, revolving around Florida Statutes §§ 310.01, 310.03 and 310.04, included within the chapter having to do with "Pilot Commissioners and Pilots." The pertinent portions of those statutes read (Italics added) —

310.01 *Pilot commissioners to be appointed and to act as port wardens.* — The governor, by and with the advice and consent of the senate, shall appoint a board of pilot commissioners for each county in this state in which a port is located . . .

\* \* \*

310.03 *Pilot commissioners to examine and license pilots.* — The board of pilot commissioners shall examine persons who may wish to be licensed as pilots, in all matters pertaining to the management of vessels; also in regard to their knowledge of the channel and the harbor where they wish to act as pilots; and if upon examination they find them qualified to take command of all classes of vessels liable to enter that port and are thoroughly familiar with the channel and currents of the harbor, they shall appoint and license such number of those found qualified as are requisite to perform the duties required of the pilots for that port, so there shall not be more than . . . nine for the port of Jacksonville . . .; and thereafter when vacancies occur in the number of pilots in any of the ports of this state, the commissioners of that port may, in their discretion, grant licenses as pilots heretofore . . . said pilots shall be entitled to hold their licenses and appointments during good behavior; . . . and provided, that *in the event a vacancy occurs while an apprentice is serving his apprenticeship, he shall have prior consideration over other applicants for the position* . . .

310.04 *Apprenticeship.* — There may be indentured in each port of this state one apprentice for every five, and three over five, or multiple of five licensed pilots of such port; but every port may have one apprentice. Any person desiring to become a pilot's apprentice shall file with the board of pilot commissioners a written application approved by a majority of the licensed pilots of the port, one of whom shall signify his willingness to have such apprentice indentured to him; and if there be a vacancy in the number of apprentices allowed for such port, the board of pilot commissioners shall approve such application; and the applicant shall then, with the approval of his parent or guardian, be indentured as an apprentice to the licensed pilot who has signified his willingness to take such apprentice for the term of four years; and the indenture shall be recorded in the records of the board of pilot commissioners, and the said board shall thereupon assign the said apprentice to a regular pilot boat on the bar of such port. *In filling vacancies in the number of licensed pilots for any port, the board of pilot commissioners shall prefer, in the order of a service, those who have served apprenticeship under this law;* provided, that no other requirements than those provided for by law shall be demanded of those who are serving as pilot apprentices; . . .

The plaintiff, then in good odor with the nine licensed pilots of the port of Jacksonville, got them to anoint him with the holy oil of their approval some six years ago, got one of them to agree to become his mentor, and — thus equipped as the statute required — received the imprimatur of the board of pilot commissioners as an apprentice pilot.

The plaintiff served as an apprentice pilot some three and a half years, and then made the mistake of disagreeing with the licensed pilots over a matter dear to their hearts and pocketbooks, he and another apprentice pilot advocated increasing the number of licensed pilots to more than nine. The egg hit the fan. The plaintiff became decidedly persona non grata. The licensed pilot to whom the plaintiff was "indentured" (in the quaint language of the statute) tried to shake the plaintiff loose from his coat-tails, and the nine licensed pilots cut the two maverick apprentices' pay in half and expressed themselves to the board of pilot commissioners as not liking to work with those apprentices, not recommending they be made licensed pilots, and feeling that it would be very difficult to work with them any longer (plaintiff's exhibit 3: board minutes 9/28/62).

According to the testimony of the chairman ("president", the statute calls it) of the board of pilot commissioners, the board took the position that the plaintiff had a four-year contract as an apprentice, and that his pay should not be cut. The plaintiff served out his four years, and that was the end of the road for him: he was exiled.

Dissatisfied, the plaintiff enlisted the services of an attorney who badgered the chairman of the board of pilot commissioners with telephone calls and visits, orally urging that the plaintiff be put to work as a pilot (whether as an apprentice pilot or a licensed pilot, or just as a "pilot", neither the attorney nor the chairman seem clearly to remember). The chairman took the position that the statute required approval by a majority of the licensed pilots before an application to become an apprentice pilot could be approved by the board, and since the licensed pilots would not approve the plaintiff's application, there was no point in calling a meeting of the board to discuss the matter; he declined to do so when the plaintiff's attorney so requested orally. No written application was made by the plaintiff, or by his attorney on his behalf.

The plaintiff then retained another attorney, and filed this suit for a declaratory decree on July 8, 1964.

After several rounds of pleading, the plaintiff filed his third amended complaint on March 12, 1965. Aware at that point of the recent decision of the First District Court of Appeal in Han-

kins v. Title and Trust Company of Florida, et al., 169 So.2d 526, 528 (D.C.A. 1, Fla., 1964), that in an action for a declaratory decree it is not necessary to the sufficiency of a complaint, that if the factual allegations thereof be established by proof, the plaintiff will be entitled to the relief he claims against the defendants, but that the only test is whether the plaintiff is entitled to a declaration of rights at all, this court denied the motion of the defendants who are members of the board of pilot commissioners to dismiss the complaint (although granting the motion of the defendants who are licensed pilots to dismiss the complaint as to them). The defendants who are members of the board of pilot commissioners answered the third amended complaint, and the final hearing was held before the court on May 24, 1965.

From the evidence, this court finds as heretofore and hereafter stated.

Despite the statutory requirement that the board of pilot commissioners "shall" examine persons who wish to be licensed as pilots, the board has not, for at least the last decade, examined any person who wished to be licensed as a pilot. The board has approved any application of any person desiring to become an apprentice pilot whose application was first approved by a majority of the licensed pilots, one of whom signified his willingness to have the apprentice "indentured" to him. And, when a vacancy occurred in the ranks of the nine licensed pilots, the board filled the vacancy, without examination, with a person who had served as an apprentice pilot, giving preference, the chairman says, first to persons currently serving as apprentice pilots and then to those who had completed their four-year terms as apprentices but were no longer serving as such.

Revelatory of the actual procedure followed in the board's minute entry (plaintiff's exhibit 1: 4/9/59 meeting) that a certain apprentice pilot, "next in line to become a pilot, . . . was elected to become a pilot."

The picture developed at the final hearing is that of a body of licensed pilots who in practice are self-perpetuating, choosing their successors and having their choices rubber-stamped by the board of pilot commissioners.

Strangely, that sort of state statutory set-up was approved by the Supreme Court of the United States, albeit by a bare 5-to-4 majority, when attacked as unconstitutional because of a denial of equal protection of the laws. Kotch v. Board of River Port Pilot Commissioners for the Port of New Orleans, 330 U.S. 552 (1946). The bare majority of the Supreme Court held that they could not say that a state statutory method for the selection of pilots is unrelated to the objective of securing for the state and others

interested the safest and most efficiently operated pilotage system practicable, and therefore the kind of discrimination which violates the equal protection clause of the 14th amendment to the federal constitution, simply because "It is within the framework of this long-standing pilotage regulation system that the practice has apparently existed of permitting pilots, if they choose, to select their relatives and friends as the only ones ultimately eligible for appointment as pilots."

The minority of the court thought it beyond legislative power to make entrance to an occupation turn upon such a criterion as blood relationship to those who are already licensed as pilots.

To one who has seen fairly extensive wartime service as a ship pilot in a number of ports in this and foreign countries, and who long ago concluded that it took about the same degree of native ability and experience to drive a tractor-trailer combination as to pilot a ship, the majority's references to "the advantages of early experience under friendly supervision in the locality of the pilot's training, the benefits to morale and esprit de corps which family and neighborly tradition might contribute, the close association in which pilots must work and live in their pilot communities and on the water" seem to constitute a mystique unsupportable by facts. Much more to the point is the reference (at footnote 22) to the fact that "it seems to have been accepted at an early date that in pilotage, unlike other occupations, competition for appointment, for the opportunity to serve particular ships and for fees, adversely affects the public interest in pilotage."

Granting the premise last stated, competition can effectively be curtailed by limiting the number of pilots. There is no public need to go further and limit the appointment of new pilots to those who are popular with the old pilots. That sort of apprentice system, as is pointed out in State of Florida, ex rel. Attorney General v. Jones, 16 Fla. 306, 316 (S.C. Fla., 1878), was made obligatory by law for all trades in England for centuries from the time of the first Queen Elizabeth, but finally, in 1814, became non-obligatory. It is a survival of an earlier day. Calling pilotage a "unique institution" as does the majority in the Kotch case, does not make such an anachronism sacrosanct in a day when the trend is to open doors to all who can qualify through ability, to permit no state law to open and shut doors arbitrarily because of popularity or unpopularity with those already inside.

But such remarks by this court are a work of manifest inutility. A majority of the Supreme Court of the United States has decided contrary to what this court would have decided. This court is bound by that decision. The Florida statute is not violative of the 14th amendment to the federal constitution.

The plaintiff never claimed it was, so the foregoing does not constitute a ruling on the constitutionality of the Florida statute.

The plaintiff contends that he is "the oldest apprentice Bar Pilot who has served his apprenticeship", so he is next in line for appointment as a licensed pilot, and the board of pilot commissioners must appoint him to the next vacancy when it occurs, but the board won't do it. He wants this court to tell the board it must.

This court cannot tell the board of pilot commissioners that it must appoint the plaintiff to the next vacancy that occurs among the licensed pilots.

Although the board has for many years gone along with the licensed pilots' choices of their successors, the board does not have to do so, nor is it lawful for the board to do so. Under the statutes, the board "shall" (not "may") examine persons who wish to be licensed as pilots, and this court cannot properly command the board to continue ignoring statutory duty.

The plaintiff also contends that he has a right to continue as an apprentice pilot until a vacancy occurs among the licensed pilots. He asks that this court make the board continue him as such.

This court cannot properly do so. If Florida Statutes §310.04 is valid, the statutorily contemplated term of apprenticeship seems to be four years, not "during good behavior", not until there is a vacancy among the licensed pilots. While there seems to be no statutory prohibition against serving successive four-year terms of apprenticeship, and doubtless that was customary if no vacancy occurred during an initial apprenticeship term and if the apprentice remained acceptable to his elders, the statute requires the accolade of the licensed pilots in order to become an apprentice, and this court cannot say that it is a misconstruction of the statute to apply that requirement to a second term as apprentice.

If the statute is constitutional, the plaintiff cannot insist on being given another term as an apprentice, unless he can get back into the good graces of the licensed pilots.

The plaintiff also contends that Florida Statutes §310.04 is an unconstitutional delegation of legislative power, violative of section 1 of article III of the constitution of Florida, in that the legislature delegates its power to prescribe what qualifications must be possessed by a holder of a franchise as an apprentice pilot not to the board of pilot commissioners, an official public body, but to a group of private persons, the licensed pilots.

If a majority of the Federal Supreme Court had not decided to the contrary 19 years ago, and the plaintiff had raised the point, this court would probably declare unconstitutional, as violative of the 14th amendment to the federal constitution, the statutory requirement that an applicant for a position as apprentice pilot have the blessing of the licensed pilots.

The point raised here is not equal protection of the laws, but whether the legislature may constitutionally delegate to licensed pilots the power to say yea or nay to an applicant for a position as an apprentice pilot.

Licensed pilots in Florida are not public officers, but merely private citizens holding franchises. State of Florida, ex rel. Attorney General v. Jones, 16 Fla. 306, 309-311 (S.C. Fla., 1878). Regardless of the scope of the authority the legislature may properly delegate to a public officer, agency or body, there can be no doubt that the legislature cannot lawfully delegate any authority to a group of private citizens. Yet here the legislature, without prescribing any criteria whatever, confers on a group of private citizens, and indeed upon one private citizen, the power to decide whether an applicant may become an apprentice pilot. The one licensed pilot is free to decide whether the applicant should be so "indentured", using whatever criteria occurs to him. If he decides he likes the applicant, then four more private citizens have the power to decide whether the applicant suits them as well.

That, of course, is ridiculous. The legislature cannot constitutionally delegate its power to prescribe criteria to private citizens. The portions of Florida Statutes §310.04 so prescribing are unconstitutional. The plaintiff, as a person who has applied for a new term as an apprentice pilot and been denied it because of the terms of that statute, has the standing to attack that statute on the ground of unconstitutionality. This court will declare that statute invalid.

But that does not mean that the plaintiff will be continued as an apprentice pilot.

The portions of Florida Statutes §310.04 that are unconstitutional are so interwoven with the remainder of §310.04 that they cannot be extricated therefrom and leave anything recognizable as legislative intent. This court would have to rewrite §310.04 in a fashion it is not authorized to do. If this court, improperly, sought to re-write that section so as to omit the offending portions, the result would be a section in which the legislature delegated the power to appoint apprentice pilots to the board of pilot commissioners, again without any criteria. The legislature could not properly delegate such power even to an official board with-

out establishing at least some general standards, defining a pattern to which the board's criteria must conform. Husband v. Cassel, 130 So.2d 69 (S.C. Fla., 1961); Hutchins v. Mayo 143 Fla. 707, 197 So. 495, 496 (S.C. Fla., 1940). Those standards only the legislature has power to prescribe; this court cannot write them into the statute. So the entire §310.04 must fall, necessarily.

The net effect is that, with Florida Statutes §310.04 gone, there is no legislative machinery for the designation of apprentice pilots.

It was for this reason that this court was reluctant to entertain this action: the plaintiff could not get the mileage out of his action that he seemed to think he could. But, under the Hankins case, supra, he has a right to a declaratory decree of this court, even if what must be declared doesn't suit him very well. About all he can end up with is a declaration that, when a vacancy occurs among the licensed pilots, he can get a shot at it on even terms with other applicants, not being favored over anyone else and not having anyone else favored over him. Of course, by the time a vacancy occurs the legislature might very well have written some new rules, so that there might be an entirely different ball game.

The court understood the plaintiff's attorney to say, at the conclusion of the final hearing, that those were the only points the plaintiff wished to raise, so any other points that might seem to be made in the third amended complaint will be ignored in disposing of this case.

It is therefore, decreed that —

1. The plaintiff has, by this proceeding if not otherwise, signified to the defendants, members of the board of pilot commissioners of the port of Jacksonville, that he wishes to be licensed as a pilot of that port. Florida Statutes §310.03 does not require that the plaintiff signify in writing his wish to be so licensed, or signify that wish in any particular manner. This proceeding serves as notification of the board of the plaintiff's wish.

2. If and when a vacancy occurs among the licensed pilots of that port, and if and when that board deems that the vacancy should be filled, that board must examine persons, including the plaintiff, who may wish to be licensed as pilots of that port, in all matters pertaining to the management of vessels, and in regard to their knowledge of the channel and the harbor of the port of Jacksonville. If, upon examination, that board finds the plaintiff qualified to take command of all classes of vessels liable to enter that port and thoroughly familiar with the channel and

currents of the harbor, that board shall appoint and license either the plaintiff or some other person the board finds to be so qualified and familiar as a pilot of that port.

3. Florida Statutes §310.04 is unconstitutional and invalid, violative of section 1 of article III of the constitution of Florida in that it constitutes an unlawful delegation of legislative power to prescribe qualifications of franchise holders to private citizens holding no public office.

4. Florida Statutes §310.04 being invalid, in licensing a pilot to fill any vacancy that board need not prefer, in the order of a service, those, including the plaintiff, who have served apprenticeship under that invalid statute.

5. Florida Statutes §310.04 being invalid, and there being no statute now existing providing for apprentice pilots, no person can be serving an apprenticeship at the time any vacancy occurs among the licensed pilots of that port. Hence, that board cannot give prior consideration over other applicants for the position of pilot to any apprentice then serving an apprenticeship, in filling any such vacancy, despite the admonition in Florida Statutes §310.03 to do so.

6. Since no statutory machinery now exists for the designation of apprentice pilots, that board now has no statutory authority to designate anyone an apprentice pilot, hence is not required to entertain any application from the plaintiff to be designated an apprentice pilot.